Rory A. WESSEL; Donald Scott; Frank Parra; Walter K. Newton; Paulette Mora Gonzales; Mark C. Mora; Janine Lavigne; Raymond Largo, Sr.; Mark A. Garcia; Rudy Archuleta, Jr.; Jerry Anaya; Sam Aguilar; Rueben Lucero, and all others similarly situated, Plaintiffs–Appellants/Cross–Appellees,

v.

CITY OF ALBUQUERQUE; Jim Baca, Mayor, City of Albuquerque; Peggy Hardwick, Director Employee Relations, City of Albuquerque; Local 624 American Federation of State, County & Municipal Employees, AFL–CIO, Defendants–Appellees/Cross–Appellants.

Nos. 01–2155, 01–2168.

United States Court of Appeals, Tenth Circuit.

Aug. 13, 2002.

Raymond J. LaJeunesse, Jr., National Right to Work Legal Defense Foundation, Inc., Springfield, VA (Robert L. Pidcock, Albuquerque, NM, with him on the briefs), for Appellants/Cross–Appellees.

Jeremiah A. Collins of Bredhoff & Kaiser, P.L.L.C., Washington, DC (Robert Alexander of Bredhoff & Kaiser, P.L.L.C., Washington, DC; Jerry Todd Wertheim of Jones Sneed Wertheim Wentworth & Jaramillo, PA, Santa Fe, NM; and Robert F. Tinnin and Thomas J. McBride of Hinkle Hensley Shanor & Martin, LLP, Albuquerque, NM, with him on the briefs), for Appellees/Cross–Appellants.

Before EBEL and McKAY, Circuit Judges, and SAM,* Senior District Judge.

\* The Honorable David Sam, United States Senior District Judge for the District of Utah, sitting by designation.

\*\* Issues 1–3 and 5 are joined by Judges Ebel and Sam. Issue 4 is joined by Judge Sam.

McKAY, Circuit Judge, delivering the opinion of the court \*\* as to Issues 1–5.

Thirteen non-union members brought this 42 U.S.C. § 1983 action against the City of Albuquerque alleging that the City violated their First Amendment rights through the compulsory deduction of union fair share fees from their wages. The nonmembers filed this action in the United States District Court for the District of New Mexico seeking a declaratory judgment and injunction to prevent further fair share deductions. They also sought damages or equitable restitution in the amount of all or part of the fees unlawfully collected, nominal damages, and attorney fees.

The district court granted the nonmembers leave to supplement their complaint to set forth additional events which were a continuation of conduct alleged in the original complaint. However, the district court denied the nonmembers' request to add a sixth claim for relief, two new defendants, a jury demand, and a demand for punitive damages on the ground of undue delay.

The parties filed cross-motions for summary judgment. The district court granted summary judgment to the nonmembers on their second claim for relief, holding that the Union's fair share notice was unlawful and violated the nonmembers' constitutional right to disclosure of sufficient information to gauge the propriety of the Union's fee. The court awarded the nonmembers nominal damages of $1.00 but denied injunctive relief. The district court granted Defendants summary judgment on all other claims. The parties cross-appealed to this court.

Judge Ebel, joined by Judge Sam, delivers the opinion of the court on Issue 6. Judge McKay has filed a separate dissent on Issue 6. Judge Ebel has filed a separate dissent on Issue 4.

**1190**

The parties raise six issues on appeal. They are: (1) whether the 1996 City of Albuquerque Fair Share Resolution provides legislative authorization for the collection of fair share fees; (2) whether a union's notice to nonmembers of a fair share fee payment's basis is constitutionally inadequate if the notice does not include a full audit of the union's schedule of chargeable and nonchargeable expenses; (3) whether the district court abused its discretion in refusing to enter a permanent injunction against future unlawful fair share notices and in determining that a refund of the entire fair share fee was not required where plaintiffs had received a refund of all fair share amounts improperly charged to them; (4) whether the Fair Share Resolution must be construed to only allow fees to be used for bargaining-related expenses in the unit and as prohibiting collection of fees representing the pro rata costs of union programs available to all bargaining units; (5) whether the district court abused its discretion in denying plaintiffs' motion to amend their complaint to add a new claim, two new defendants, a jury demand, and a demand for punitive damages based on undue delay; and (6) whether an agreement by a union to indemnify a public employer against claims arising out of fair share fee collection violates the First Amendment and 42 U.S.C. § 1983.

**Issue 1—Legislative Authorization:**

◼ We first address whether the 1996 City of Albuquerque Fair Share Resolution provides legislative authorization for the collection of fair share fees. The parties raised this issue in their cross-motions for summary judgment. The district court granted summary judgment in favor of the City, holding that the Fair Share Resolution does provide legislative authorization for the collection of fair share fees. We review "the grant of summary judgment *de novo,* applying the same standards used by the district court." *Byers v. City of*

*Albuquerque,* 150 F.3d 1271, 1274 (10th Cir.1998).

◼ Requiring employees to help finance the union as a collective bargaining agent is constitutionally justified only if there has been a legislative assessment by the public employer. *Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 517, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991). The Fair Share Resolution in this case expressly provides that "collective bargaining agreements with City employee unions may include fair share provisions if at least 50% of the recognized bargaining unit are union members." Aplt.App. at 43. The Resolution conveys the clear intent of the City of Albuquerque to permit the collection of fair share fees.

◼ Beyond evidencing an intent to allow fair share fees, the legislative assessment must be valid. The nonmembers argue that the language in a City ordinance enacted previous to the Fair Share Resolution prohibits fair share fees and that the Resolution cannot override the prior ordinance. The ordinance in question provides that "City employees ... have the right to refuse to join and participate in the activities of employee organizations." Albuquerque, N.M., Code § 3–2–4(A). The ordinance's plain language simply states that employees are not required to join the union or take part in union activities. The ordinance is silent as to the collection of fair share fees. Nonmember employees are only required to pay the fair share fee representing the Union's cost of bargaining on their behalf. "[T]he desirability of labor peace and eliminating 'free riders'" justify the payment of fair share fees "'for the purposes of collective bargaining, contract administration, and grievance adjustment.'" *Lehnert,* 500 U.S. at 517 (quoting *Abood v. Detroit Bd. of Educ.,* 431 U.S. 209, 225–26, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) (forced contri-

bution does not violate nonmembers rights because of the strong public policy interests in labor peace and the elimination of "free riders")). Viewed in the context of the public policy interests of allowing fair share fees, we hold that the ordinance (which does not specifically address the fee issue) does not necessarily prohibit these fees.

█ The subsequently enacted Fair Share Resolution makes clear the City of Albuquerque's intent to allow fair share fees. The legislative assessment that is constitutionally required in order to allow fair share fees does not demand specific language or formality. *See id.* at 517; *see also Abood,* 431 U.S. at 222 ("Such interference as exists is constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by Congress."); *see also Nashua Teachers Union v. Nashua Sch. Dist.,* 142 N.H. 683, 707 A.2d 448, 450 (1998) ("We interpret *Abood* also to permit agency fees in the public sector where the legislature has implicitly authorized them by statute as part of an overall legislative scheme to promote labor peace through mandatory collective bargaining."). All that is necessary is the expression of an interest to promote labor peace and prevent free riding with orderly collective bargaining. *Lehnert,* 500 U.S. at 517; *Abood,* 431 U.S. at 222. The Fair Share Resolution expressly states that "collective bargaining agreements with City employee unions may include fair share provisions." Aplt.App. at 43. The specific language employed in the Fair Share Resolution meets the *Lehnert* necessary expression of the desirability of allowing fair share fees. We agree with the district court that the Fair Share Resolution "is an adequate legislative assessment

by the City" allowing the deduction of fair share fees. Aplt.App. at 410.[1]

We acknowledge that some courts have found a conflict between fair share resolutions and right-to-work laws, but our research suggests that the vast majority of those decisions were based on fair share deductions equal to the amount of dues paid by union members. *See Baldwin v. Arizona Flame Rest., Inc.,* 82 Ariz. 385, 313 P.2d 759, 762, 766 (1957) (recounting lower court's unreported ruling that deduction of sum equivalent to union dues violated right-to-work law, but declining to reach issue); *City of Hayward v. United Public Employees, Local 390,* 54 Cal. App.3d 761, 126 Cal.Rptr. 710, 714 (1976) ("The forced payment of dues or their equivalent is, at the very least, 'participation' in an employee organization."); *Schermerhorn v. Local 1625, Retail Clerks Int'l Ass'n,* 141 So.2d 269, 273, 276 (Fla. 1962) (holding that deduction of sum equal to union dues violates state constitutional prohibition on denying right to work "on account of membership or non-membership in any labor union"); *Higgins v. Cardinal Mfg. Co., Inc.,* 188 Kan. 11, 360 P.2d 456, 466 (1961) (holding that deduction of sum equal to union dues violates state constitutional amendment prohibiting employer from conditioning employment on union membership); *Churchill v. S.A.D. #49 Teachers Ass'n,* 380 A.2d 186, 192 (Me.1977) ("[T]he forced payment of dues or their equivalent under an 'agency shop' clause is tantamount to coercion toward membership or, at the very least, toward participation in a labor organization expressly forbidden by statute."); *Indep. Guard Ass'n, Local No. 1 v. Wackenhut Servs., Inc.,* 90 Nev. 198, 522 P.2d 1010, 1014 (1974) (holding that deduction of sum

---

1. We do not address the nonmembers' argument that a resolution cannot repeal or amend an ordinance. Because the ordinance does not prohibit fair share fees, the Fair Share Resolution is not in conflict with the previously enacted ordinance.

equal to union dues "is the equivalent of an agreement which excludes persons from employment ... based on nonmembership in a labor organization"); *New Jersey Turnpike Employees Union, Local 194 v. New Jersey Turnpike Auth.*, 117 N.J.Super. 349, 284 A.2d 566, 568 (N.J.Super.Ct. Ch. Div.1971) (holding that deductions violate statutory right not to join or assist union because non-member employees will join union "if faced with assessments identical to union dues and initiation fees"); *Ficek v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local No. 647*, 219 N.W.2d 860, 873 (N.D.1974) (holding that deduction of sum equal to union dues "imposes the practical equivalent of compulsory [union] membership"). Indeed, some of these courts have expressly distinguished their holdings from situations where deductions are limited to the pro rata expenses incurred by the union in representing nonmembers. *See Churchill*, 380 A.2d at 192 n. 5 ("We do not intimate what our decision would be if the so-called 'agency shop' clause in the instant case had required nonjoinder employees to pay to the bargaining agent only their proportionate share of the costs of securing the benefits conferred upon all members of the bargaining unit."); *Smigel v. Southgate Comm. Sch. Dist.*, 388 Mich. 531, 202 N.W.2d 305, 307 (1972) (holding that deduction of sum equal to dues violates state law where "[t]here is not even the pretense that the sum to be deducted is a pro rata share of representation expenses, or that it will even be used for such purpose").

In the cases where courts have found no conflict between fair share deductions and right-to-work laws, the deductions have consistently been limited to proportionate costs. *See Nashua Teachers Union v. Nashua Sch. Dist.*, 142 N.H. 683, 707 A.2d 448, 453 (1998) (holding that deductions do not "encourage" union membership "pro-vided that such fees are tailored to nonunion employees' pro rata share of the cost of collective bargaining, contract administration, and grievance adjustment"); *Town of North Kingstown v. North Kingstown Teachers Ass'n*, 110 R.I. 698, 297 A.2d 342, 346 (1972) (holding that deductions did not violate statute guaranteeing employees freedom "to join or decline to join" union as long as deductions were no "more than a proportionate share of the costs of securing the benefits conferred upon all members of the bargaining unit"). This is true even where that limitation has not been the explicit basis for the holding. *See Schaffer v. Bd. of Educ.*, 869 S.W.2d 163, 167 (Mo.Ct.App.1993) (allowing deduction of proportionate representation costs where statute forbids employers from compelling employees to join union); *see also Fort Wayne Educ. Ass'n, Inc. v. Goetz*, 443 N.E.2d 364, 371 (Ind.Ct.App.1982) (allowing deduction of proportionate representation costs where statute prohibits employer from encouraging union "membership" based on absence of "any statutory right to refrain from 'assisting' or 'participating' in a labor organization").

The Fair Share Resolution at issue in this case specifically limits deductions to costs related to "an employee's proportionate share of the union's costs of negotiating and administering the collective bargaining agreement and adjusting the grievances and disputes of bargaining unit employees." Aplt.App. at 44. Accordingly, contrary to the nonmembers' portrayal, we find the relevant case law to be consistent with our conclusion that there is no conflict between the Fair Share Resolution and the City's right-to-work ordinance.

### Issue 2—Fair Share Notice Deficiencies:

■■■ The second issue is whether a union's notice to nonmembers of a fair share fee payment's basis is constitutionally inadequate if it does not include a full

audit of the union's schedule of chargeable and nonchargeable expenses. Before addressing the alleged Fair Share Notice deficiencies, we must determine whether the plaintiffs had standing to assert this claim. We conduct plenary review to determine whether the nonmembers have standing. *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1228 (10th Cir.2001).

■ The City claims that the nonmembers lacked standing to complain of any deficiencies in the Fair Share Notice. The City argues that the nonmembers disclaimed any interest in appropriate constitutional notice because they paid no attention to the notice's inadequacies in their objections and admitted that they would have objected to the fees regardless of the Notice's contents. However, the City overlooks the fact that the loss of a procedural right "is itself an injury" sufficient to provide standing "without any requirement of a showing of further injury." *Bertulli v. Independent Ass'n of Continental Pilots*, 242 F.3d 290, 295 (5th Cir.2001). Additionally, "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions and [therefore] the denial of procedural due process [is] actionable for nominal damages without proof of actual injury." *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). We hold that the nonmembers did have standing. While they may not have specifically stated that the deficient notice is what drove them to object, the nonmembers did suffer from the lack of sufficient information and the inclusion of inaccurate information in the notice.

■ Since the nonmembers had standing to assert this claim, the question then becomes whether the notice to nonmembers of the fair share fee payment's basis was also constitutionally inadequate since it did not include a full audit of the Union's

schedule of chargeable and nonchargeable expenses. The district court granted the nonmembers summary judgment holding that the fair share notice "was deficient" based on the Union's concession that the notice "contained numerical errors [and] did not indicate which portions of dues went to each of the three levels of the union." Aplt.App. at 411. Nevertheless, the nonmembers challenge the district court's holding and claim that the notice was further deficient because it did not include the full audit or the auditor's notes. We review the grant of summary judgment *de novo*. *Byers*, 150 F.3d at 1274.

■ In *Chicago Teachers Union v. Hudson*, the Supreme Court stated that "[t]he Union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include the major categories of expenses, as well as verification by an independent auditor." 475 U.S. 292, 307, n. 18, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). *Hudson* clearly requires "verification by an independent auditor." *Id.* The issue facing us is whether *Hudson* requires the Union to include the auditor's reports and notes in the notice itself.

■ The original notice included the Union's schedules of expenses and a statement that this was "independently audited financial information." Aplt.App. at 58–60. The auditors' reports and notes to the schedules were not included. *Id.* Verification by an independent auditor is required to give nonmembers "assurance that the reviewed books . . . really do reflect the concrete world transactions to which they refer." *Prescott v. County of El Dorado*, 177 F.3d 1102, 1107 (9th Cir.1999), *remanded*, 528 U.S. 1111, 120 S.Ct. 929, 145 L.Ed.2d 807, *reinstated in relevant part*, 204 F.3d 984 (2000). Verification is also necessary to give nonmembers sufficient information to make "their own judgment

about whether to challenge the union's determination." *Penrod v. NLRB*, 203 F.3d 41, 46 (D.C.Cir.2000). Without the auditor's reports, nonmembers could not have sufficient information to make such a determination. A simple statement that the Union's expenses were audited conveys minimal, if any, assistance to nonmembers attempting to decide whether to challenge the Union's determination. We hold that *Hudson* contemplates, in the notice, "a report expressing the auditor's opinion on the schedule." Aplt. Br. at 25. Several district courts and at least one circuit court have expressed a similar view. *See Penrod*, 203 F.3d at 46; *see also Masiello v. U.S. Airways, Inc.*, 113 F.Supp.2d 870, 877 (W.D.N.C.2000); *Reese v. City of Columbus*, 798 F.Supp. 463, 468 (1992), *further proceedings*, 826 F.Supp. 1115 (S.D.Ohio 1993), *aff'd in part, rev'd in part on other grounds*, 71 F.3d 619 (6th Cir. 1995); *but see Weaver v. University of Cincinnati*, 764 F.Supp. 1241, 1245 (S.D.Ohio 1991), *affirmed and remanded*, 970 F.2d 1523 (6th Cir.1992).

■■■■■ We decline, however, to adopt a blanket rule that an auditor's notes must always be included in the notice. It is essential that the notice provide the auditor's explanation of why the fees to be deducted are permissible; in our view, it is immaterial whether this explanation comes in the form of a report or in the underlying notes. If the report itself is simply a conclusory indication that the proposed deductions have been audited, then disclosure of the notes may prove necessary. However, it is the substance of the information, rather than the nomenclature of the means by which it is communicated, that is the proper focus of the inquiry under *Hudson.*

Because the Union already issued a revised notice including the auditor's materials and because the district court correctly awarded nominal damages to nonmembers based on the deficiencies in the notice, we hold that the nonmembers are entitled to no further relief.

**Issue 3—Permanent Injunction and Amount of Refund:**

■■■■■ The nonmembers next argue that the district court abused its discretion in refusing to enter a permanent injunction against future unlawful fair share notices and further erred in determining that a refund of the entire fair share fee was not required. We review a denial of an injunction for an abuse of discretion, considering "whether the facts indicate a danger of future violations." *Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir.1997). A party moving for injunctive relief must satisfy the court that "there exists some cognizable danger of recurrent violation." *United States v. W.T. Grant*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

The district court determined that the nonmembers did not meet their burden. The Union issued a corrected Fair Share Notice and committed itself to include the required information in future notices. We hold that this is sufficient. Therefore, the district court did not abuse its discretion in concluding that entry of an injunction was not necessary.

■■■■■ We review *de novo* a denial of compensatory damages based on conclusions of law. *McClure v. Independent Sch. Dist. No. 16*, 228 F.3d 1205, 1212 (10th Cir.2000). The nonmembers were refunded the portion of the fair share fee that exceeded what they could properly be charged. However, the nonmembers argue that the district court should have awarded them a refund of *all* fees collected. In light of the copious persuasive authority to the contrary, we cannot so hold.

■■■■ A union's violation of procedural requirements for the collection of fair

share fees does not entitle nonmembers to a "free ride" but only to a refund of the portion of the amounts collected that exceed what could be properly charged. *Prescott,* 177 F.3d at 1109 (noting that *Hudson* did not hold that the proper remedy was full restitution of all collected fees); *Weaver v. University of Cincinnati,* 970 F.2d 1523, 1533 (6th Cir.1992); *Hohe v. Casey,* 956 F.2d 399, 415–16 (3d Cir.1992); *Gilpin v. AFSCME,* 875 F.2d 1310, 1314–16 (7th Cir.1989). A return of all fees "would undermine *Abood's* policy concern that every employee contribute to the cost of collective bargaining." *Weaver,* 970 F.2d at 1533 (citations omitted). Additionally, "*Hudson* did not disturb the Supreme Court's earlier decision in [*Brotherhood of Railway Clerks v. Allen,* 373 U.S. 113, 122, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963) ] 'that the proper remedy for an unconstitutional fee collection is not a refund of the total fee,' but is the refund of the portion of the exacted fees proportionate to the union's nonchargeable expenditures." *Id.* (quotations and citations omitted).

Nonmembers are not entitled to a free ride. The Union's efforts in collective bargaining, contract administration, and grievance adjustment continue to benefit nonmembers. Therefore, we hold that the nonmembers are only entitled to the portion of the fees collected that exceeded what they could properly be charged (an amount they have already received).

**Issue 4—Collection of Extra–Unit Fees:**

 The nonmembers claim that the Fair Share Resolution, properly construed, only allows fees to be used for bargaining-related expenses in the unit and prohibits collection of fees representing the local unit's pro rata costs of union programs available to all bargaining units. The Supreme Court has held that "a local bargaining representative may charge objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates, even if those activities were not performed for the direct benefit of the objecting employees' bargaining unit." *Lehnert,* 500 U.S. at 524. Based on *Lehnert,* the district court held that the Union could collect extra-unit fees and granted summary judgment in favor of the City. We review *de novo* the grant of summary judgment. *Byers,* 150 F.3d at 1274.

The nonmembers argue that the plain language of the Fair Share Resolution coupled with the Memorandum of Understanding limit the purposes for which the fair share fees may be collected to those that directly benefit the local bargaining unit. The Resolution provides, in pertinent part: "The fair share fee shall be an employee's proportionate share of the union's costs of negotiating and administering the collective bargaining agreement and adjusting the grievances and disputes of bargaining unit employees." Aplt.App. at 43–44, 47. Additionally, the Agreement between the City and the Union provides, in pertinent part: "The amount of the agency fee shall include only costs related to the negotiation and administration of the collective bargaining agreement and the adjustment of grievances or disputes of bargaining unit employees." Aplt.App. at 182.

The above language is a common and permissible method of adopting the constitutional standard expressed in *Lehnert* permitting the fair share of extra-unit expenses. *See Gilpin,* 875 F.2d at 1311–12 (chargeable fee is "pro rata share of the expenses that [a union] incurs in negotiating for and administering the collective bargaining agreement"); *see also Reese,* 71 F.3d at 622–26 (statute permitting fair share fees for expenses related to "unions' costs of negotiating, ratifying, enforcing and administering the collective bargaining agreement between the unions and the

City" allowed extra-unit expenses under *Lehnert* ).

The language of the Fair Share Resolution and the Memorandum of Understanding clearly contemplate that nonmembers will be charged their *proportionate share* of union programs which are available to all · bargaining units (including their local bargaining unit). If such fees are not permitted, then nonmembers would be "free-riders" receiving a benefit from these programs without cost to them. An "employee's proportionate share of the union's costs of negotiating and administering the collective bargaining agreement and adjusting the grievances and disputes of bargaining unit employees" includes extra-unit expenses that inure to the benefit of the local nonmembers' unit. Aplt.App. at 43–44.

We agree with the district court that the Fair Share Resolution and the Memorandum of Understanding basically adopt the constitutional standard set forth in *Lehnert*. Any agreement attempting to limit that which is constitutionally permissible must clearly indicate an intent to do so. The use of the word "union" in the Fair Share Resolution lacks clear intent to confine it to limit permissible expenses to those incurred solely by the "local" as opposed to the union generally. *See* Aplt. App. at 43–44. In the absence of any contrary indication, we believe that the only reasonable construction is that of an intent to adopt the constitutionally defined fair share definition.

We now must determine whether the fees collected in this case violate the *Lehnert* constitutional standard on extra-unit expenses. The Supreme Court has made it clear that "[t]here must be some indication that the payment is for services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization." *Lehnert*, 500 U.S. at 524. The

Sixth Circuit allowed extra-unit expenses that were related to collective bargaining and that would benefit the specific local bargaining unit. *See Reese*, 71 F.3d at 623–24. However, the *Reese* court noted that "extra-unit expenses [are] not chargeable if they [are] 'unrelated to an objecting employee's unit." *Id.* quoting *Lehnert*, 500 U.S. at 528. Furthermore, "the union may not claim a right to receive from the nonunion member full union dues covering *all expenses except those items which are ideological in purpose*. Instead, it may collect *only for those expenses affirmatively related to the bargaining agreement* because these constitute the only expenditures that, consistent with the First and Fourteenth Amendments under *Abood* and *Hudson*, the union may collect to prevent nonmembers' 'free riding.'" *Tierney v. City of Toledo*, 824 F.2d 1497, 1505 (6th Cir.1987) (emphasis in original).

█ There is some evidence in the record that a portion of the fees collected went to the national Union to "[serve] as exclusive representative in other bargaining units." Aplt.App. at 51, 53, 154, 156. Such fees would not inure to the benefit of the members of the local organization and their collection violates the principles expressed in *Lehnert*. We disagree with the district court's conclusion that the Union did not exceed the constitutional limitations on the types of expenses properly included in a fair share fee.

The district court is directed to hold a hearing to determine which fees are attributable to bargaining-related expenses in the unit as distinguished from those which do not inure to the benefit of the local bargaining unit.

**Issue 5—Amendment of the Complaint:**

█ We next consider whether the district court abused its discretion in denying plaintiffs' motion to amend their complaint to add a new claim, two new defendants, a jury demand, and a demand for

punitive damages on the ground of undue delay. We will not reverse a decision denying leave to amend a complaint "absent an abuse of discretion." *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir.1992).

■ The district court found that "Plaintiffs did not promptly move to amend their Complaint once they received [the additional] information nor did they move for an extension...." Aplt.App. at 382. The district court denied Plaintiffs' request holding that it was "unduly delayed." *Id.* Leave to amend may properly be denied for undue delay. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir.1998); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993). The district court did not abuse its discretion by refusing to allow the nonmembers to amend their complaint based on undue delay.

**EBEL, Circuit Judge, delivering the opinion of the court [2] as to Issue 6— Constitutionality of the Indemnification Agreement:**

■ The nonmembers seek to void the indemnification agreement between the City and the Union. The memorandum of understanding between the City and the Union provides that "[t]he Union shall indemnify and hold the City harmless from any claim or challenge to this fair share MOU, the calculation and imposition of the fair share amount, or any other claims involving fair share payments under this MOU." The collective bargaining agreement requires the Union to "indemnify and hold the City harmless against any and all claims, demands, suits or other forms of liability, including payment of reasonable attorney fees and costs for counsel selected by the City, for any claim or challenge to the imposition of an agency fee."

The nonmembers argue that these provisions are "void and unenforceable as against public policy inherent in the First Amendment." Because the City has a duty to ensure that constitutional fair share procedures are in place, the nonmembers contend that the City's effort to escape liability for its failure to fulfill that duty violates public policy. The district court disagreed, reasoning that the memorandum of understanding and collective bargaining agreement, read in their entireties, "not only demonstrate that the City is aware of its obligation to have a constitutional procedure in place, but also set out the procedure and require the Union to comply with the procedures before the City will deduct 'fair share' fees." The court "read the indemnification clause as protecting the City from any violations by the Union and for which the City can do little, if anything, to detect and prevent." The court thus concluded that the provisions were "not unconstitutional and void as against public policy."

We find the district court's interpretation of the indemnification provisions to be unreasonable. There is nothing in the text of the provisions to suggest that the City is to be indemnified only for "violations by the Union ... for which the City can do little, if anything, to detect and prevent." Rather, the City is to be indemnified for any liability—including costs and fees—arising from any claims "involving fair share payments." It seems clear that this broad scope encompasses not only liability resulting from the Union's mistakes, but also from the City's failure to fulfill its own obligations.

■ That a public employer has certain obligations within the fair share deduction framework established by courts is beyond dispute. *See Hudson v. Chicago*

**2.** This portion of the opinion is joined by Judge Sam.

*Teachers Union,* 743 F.2d 1187, 1192 (7th Cir.1984) (holding that First Amendment creates a duty for employer "to establish workable procedures for protecting dissenters' rights"), *aff'd,* 475 U.S. 292, 307 n. 20, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) ("[T]he government [employer] and union have a responsibility to provide procedures that minimize that impingement [on nonunion employees' First Amendment rights] and that facilitate a nonunion employee's ability to protect his rights."); *Mitchell v. Los Angeles Unified Sch. Dist.,* 739 F.Supp. 511, 516 (C.D.Cal.1990) ("Under *Hudson,* a public employer, as well as the public employees union, has a responsibility to see to it that adequate procedures are provided which minimize the impingement of the non-members' constitutional rights."); *Dixon v. City of Chicago,* 669 F.Supp. 851, 852 (N.D.Ill.1987) (rejecting public employer's argument "that it itself has no duty to ensure or establish the constitutionally adequate procedure described by *Hudson* "); *see also Knight v. Kenai Peninsula Borough Sch. Dist.,* 131 F.3d 807, 817 (9th Cir.1997) (holding that public employer's "duty to nonmembers is to evaluate the sufficiency of the union's notice at the time the union seeks to take action against a nonmember for failure to pay the agency fee, and not at the time of the initial mailing of the *Hudson* notice").

In light of these duties, the Sixth Circuit has held that an indemnification clause similar to the clause at issue in this case is "repugnant to public policy, and therefore, invalid." *Weaver v. Univ. of Cincinnati,* 970 F.2d 1523, 1538 (6th Cir.1992). Because "[b]oth parties to a fair share agreement must be held accountable for their responsibility to see that *Hudson's* commands are followed," the *Weaver* court concluded that a "clause that relieves the employer of all consequences for its failure to assume and conscientiously carry out its duties, including even the cost of defending legal actions, is against public policy." *Id.*

*Cf. Stamford Bd. of Educ. v. Stamford Educ. Ass'n,* 697 F.2d 70, 73 (2d Cir.1982) (voiding indemnification clause in discriminatory labor agreement because it gives employers "little reason to be concerned over whether labor agreements discriminate against women").

The Third Circuit has taken the contrary approach, holding that, even if a public employer is indemnified, the union, "upon whom most obligations fall, has a significant incentive to ensure that its procedures comply with the Constitution" in that "[f]ailure to do so may result in its being unable to retain a portion of the fair share fee." *Hohe v. Zimmerman,* 956 F.2d 399, 412 (3d Cir.1992). Thus, "invalidation of the indemnification clause is not required by the First Amendment." *Id.* Notably, the *Hohe* court also observed that the clause at issue did not provide for the indemnification of any costs or fees incurred by the public employer in defending against a claim, and that the employer presumably would have some incentive to avoid such claims. *See id.* at 411–12. By contrast, the agreement between the Union and the City expressly mandates the indemnification of costs and fees, seemingly removing any significant incentive for the City to avoid litigation. Regardless of this distinction between the cases, we believe that the *Hohe* court's focus is misplaced. The question is not whether the union alone has ample incentive to put proper procedures in place, but whether both the public employer and union do. After all, if the Supreme Court had only been concerned with the union's ability to carry out the *Hudson* requirements, it would not have placed the burden on both parties. *Hudson,* 475 U.S. at 307 n. 20.

The City also looks for support to the Ninth Circuit, which has held that employers "owe no specific duty to employees to ensure that a proper *Hudson* notice is received by each employee before agency

fees are deducted." *Foster v. Mahdesian,* 268 F.3d 689, 694 (9th Cir.2001), *cert. denied sub nom. Foster v. Garcy,* No. 01–1307, 2002 WL 386663 (U.S. June 3, 2002). This narrow holding does not suggest, however, that an employer has no duty whatsoever under *Hudson,* nor that an employer properly can shield itself from liability for any claims "arising from fair share payments." [3]

Accordingly, we reverse the district court's ruling and hold that the indemnification provisions are void as contrary to public policy.[4]

To conclude, the decision of the district court is REVERSED and REMANDED with respect to Issues 4 and 6. In all other respects, the decision of the district court is AFFIRMED.

McKAY, Circuit Judge, dissenting in part:

I respectfully disagree with the majority's resolution of Issue 6—Constitutionality of the Indemnification Agreement. I would join the Third and Ninth Circuits which have held that, because the union "has a significant incentive to ensure that its procedures comply with the Constitution[,] . . . invalidation of the indemnification clause is not required by the First Amendment." *Hohe,* 956 F.2d at 412; *see also Prescott,* 177 F.3d at 1112 (nonmember county employee lacked standing to object to union's agreement to indemnify county from any liability arising out of deductions of fees from wages of nonmembers pursuant to agency shop arrangement); *see also Foster v. Mahdesian,* 268 F.3d 689, 694 (9th Cir.2001) (employers do not owe a "specific duty to employees to ensure that a proper *Hudson* notice is received by each employee before agency fees are deducted"); *but see Weaver,* 970 F.2d at 1536–38 (*Hudson* should be read to void, as "against public policy," an agreement under which a union agrees to indemnify the employer from liability arising from challenges to agency fees).

Even though a public employer is required to adopt procedures that comply

---

**3.** A previous Ninth Circuit panel declined to reach the issue presented in this case, concluding that the objecting employee lacked standing because "[w]hile it can be assumed that [he] suffered some injury when the fees were deducted from his paycheck .... He certainly cannot show any connection between the indemnification agreement and that injury." *Prescott v. County of El Dorado,* 177 F.3d 1102, 1112 (9th Cir.1999), *vacated on other grounds,* 528 U.S. 1111, 120 S.Ct. 929, 145 L.Ed.2d 807 (2000). Although standing has not been raised as an issue by the parties in this case, we disagree with the Ninth Circuit's analysis. The alleged injury results from the indemnification provision's negation of any incentive for the City to ensure that the *Hudson* requirements were followed. The nonmembers' entire argument presumes that, if the City faced potential liability, it would have prevented the fair share fees from being deducted unconstitutionally from the nonmembers' paychecks.

**4.** Defendants also contend that voiding the indemnification provision is unwarranted be-

cause "[t]o allow a claim to be maintained against a public employer under [§ 1983] for failing to correct a union's alleged errors would be contrary to the well-settled proposition that, under § 1983, a governmental entity may only be held liable for constitutional injuries that are caused by *its own policies.*" (Resp. at 41 (emphasis in original) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).)) Whatever validity this argument may have under some circumstances is negated by the all-encompassing scope of the indemnification provisions at issue. As discussed above, the City is to be indemnified not only for claims based on the Union's unconstitutional practices or policies, but for its own unconstitutional practices and policies. If the City consistently made no effort to ensure that the Union's fair share procedures complied with *Hudson,* such a failure would likely be cognizable under § 1983 and covered by the indemnification provision.

with *Hudson,* it does not reasonably extend that the employer should be required to monitor and edit the annual notices prepared by the union. In *Hudson,* the Supreme Court held that it is the obligation of the union to establish a procedure for resolving objections to the amount of the fee charged by the union. 475 U.S. at 306, n. 17. It follows that a public employer with no obligation to consider objections to a fee charged by the union is not obligated to review, in advance, the propriety of the fee calculation or the sufficiency of the notice. The City and the "union have a responsibility to provide procedures that minimize th[e] impingement [from the agency shop] and that facilitate a nonunion employee's ability to protect his rights," *Hudson,* 475 U.S. at 307–08, n. 20. Even though the City has its own *Hudson* duty, it does not logically extend that the City should have an independent duty to monitor the Union's compliance with *Hudson.* In spite of this, the majority's opinion on this issue places on the City an independent First Amendment duty to monitor the Union's compliance because of its belief that an indemnification clause might reduce the City's vigilance in monitoring such compliance.

The indemnification clause did no more than "protect[ ] the City from any violations by the Union and for which the City can do little, if anything to detect and prevent." Aplt.App. at 415. Therefore, I would hold that indemnification clauses that relieve a public employer from liability for violation of nonmembers' First Amendment rights by collecting compulsory union fees when constitutional requirements are not met are not void as against public policy.

EBEL, Circuit Judge, concurring and dissenting in part:

I disagree with the majority's resolution of Issue 4—Collection of Extra–Unit Fees.

There is no dispute that AFSCME International (the national Union organization) and Council 18 (the regional Union organization) may receive a portion of the fees; the dispute is whether the fees may include costs that are not related to the collective bargaining agreement between the City and Local 624, or to the activities of employees within Local 624's bargaining unit. As the majority recognizes, the Fair Share Resolution provides that "[t]he fair share fee shall be an employee's proportionate share of the union's costs of negotiating and administering the collective bargaining agreement and adjusting the grievances and disputes of bargaining unit employees." Further, the Agreement between the City and the Union provides that "[t]he amount of the agency fee shall include only costs related to the negotiation and administration of the collective bargaining agreement and the adjustment of grievances or disputes of bargaining unit employees." Contrary to this limiting language, the fair share fees deducted from the nonmembers represented some costs that were not related to their bargaining unit. Indeed, the notice regarding the fair share fees included as a "chargeable" expense "[s]erving as exclusive representative in other bargaining units."

The City insists that the Resolution is broad enough to encompass contributions to the union's state and national levels because the language that seemingly limits deductions to costs incurred by the local bargaining unit "is a common way to paraphrase the constitutional standard," and thus should be interpreted as authorizing anything permitted under the Constitution. As support, they cite several cases where courts describe fair share fees as the proportionate share of costs incurred in negotiating and administering *the* collective bargaining agreement. For the most part, those cases simply state the general principle that unions can "require non-union

members to contribute a fair share of the union's costs of negotiating, administering, and enforcing a collective bargaining agreement as a condition of employment." *Damiano v. Matish,* 830 F.2d 1363, 1368 (6th Cir.1987); *accord Gilpin v. American Fed. of State, Cty., and Mun. Employees,* 875 F.2d 1310, 1311–12 (7th Cir.1989); *Tierney v. City of Toledo,* 824 F.2d 1497, 1504–05 (6th Cir.1987); *Robinson v. New Jersey,* 741 F.2d 598, 601 n. 1 (3d Cir. 1984). The courts were summarizing the governing rule—fair share fees may roughly correspond to costs related to a collective bargaining agreement. The City has pointed to no case upholding the deduction of costs not related to the local unit where the legislative authorization for fair share fees was limited to costs tied to the local bargaining unit and its collective bargaining agreement.

The City offers an affidavit from an Assistant City Attorney who states that the City Council intended "to allow City unions to collect fair share fees to the full extent permitted by the United States Constitution." Aple.App. 17. However, where legislative language is unambiguous, courts "do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process," *West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 98–99, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), much less to be expanded by after-the-fact assertions by someone who is not even a member of the legislative body that enacted the provision. We are bound by the terms of the Fair Share Resolution and the related agreements. Accordingly, the deduction of fees for costs not incurred for the purposes quoted above lacked legislative authorization and thus violated nonmember employees' First Amendment rights.

Unlike the majority, I do not believe that the Fair Share Resolution's language is coextensive with the constitutional standard of permissibility under *Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 524, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991). I agree that the district court should hold a hearing to determine which fees are permissible, but I believe that the touchstone for the inquiry is the language set forth in the Fair Share Resolution and the related agreements, which is narrower than the constitutional standard.