**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RORY A. WESSEL, DONALD
SCOTT, FRANK PARRA, WALTER
K. NEWTON, PAULETTE MORA
GONZALES, MARK MORA, JANINE
LAVIGNE, RAYMOND LARGO, SR.,
MARK A. GARCIA, RUDY
ARCHULETA, JR., JERRY ANAYA,
SAM AGUILAR, RUEBEN LUCERO,
and all others similarly situated,

        Plaintiffs-Appellees,

    v.

CITY OF ALBUQUERQUE, JIM
BACA, Mayor, City of Albuquerque,
PEGGY HARDWICK, Director
Employee Relations, City of
Albuquerque, LOCAL 624
AMERICAN FEDERATION OF
STATE, COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO,

        Defendants-Appellants.

Nos. 04-2212 and 04-2261

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CIV-00-65-LH/KBM)**

---

Jeremiah A. Collins, Bredhoff & Kaiser, P.L.L.C., Washington, D.C. (Stanley K.
Kotovsky, Jr., Tinnin Law Firm, Albuquerque, New Mexico, for Defendants-
Appellants City of Albuquerque, Jim Baca, and Peggy Hardwick, and Robert
Alexander, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., and Jerry Todd
Wertheim, Jones Snead Wertheim Wentworth & Jaramillo, PA, Santa Fe, New

Mexico, for Defendant-Appellant Local 624, American Federation of State, County and Municipal Employees, with him on the briefs) for Defendant-Appellants.

Raymond J. LaJeunesse, Jr., National Right to Work Legal Defense Foundation, Inc., Springfield, Virginia (Robert L. Piddock, Albuquerque, New Mexico, with him on the brief) for Plaintiffs-Appellees.

---

Before **HARTZ**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

This appeal is our second review of the constitutionality of fees assessed by the City of Albuquerque and its municipal union, Local 624, against employees who were not members of the union. The Supreme Court has held that employees who are not members of a union may be assessed a fair share of the costs of union expenses arising from the negotiation of collective bargaining agreements and other union activities that benefit all of the employees of a public sector employer. *Lehnert v. Ferril Faculty Ass'n.*, 500 U.S. 507 (1991). In the first appeal of this case, we held that the City's "fair share fee" assessed for union activities violated the Constitution. Finding the fee overcharged non-member employees because it billed them for activities of the union that did not benefit them, we remanded the case for a hearing to determine the amount of the overcharge and to refund any excess fees to non-union employees. *Wessel v. City of Albuquerque*, 299 F.3d 1186 (10th Cir. 2002) (*Wessel I*)

-2-

On remand, the district court concluded that the City and union had failed to prove what portion of fair share fees were allocated for activities benefitting Local 624. As a remedy for the constitutional violation, the court ordered Local 624 to refund all fees it collected from the non-member employees. In addition to this refund, the district court also ruled that the City was required to refund amounts it received from Local 624 under an indemnification provision we held void as against public policy in *Wessel I*.

In this appeal, the City and Local 624 challenge both conclusions. We agree with the district court that Local 624 failed to meet its burden of proof in showing what portion of the fair share fee benefitted the non-member employees. We conclude, however, that the district court applied the wrong standard in ordering the City to refund amounts it received under the indemnification provision.

Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM in part, and remand for further proceedings.

## I. Background

*Union Representation.* The American Federation of State, County, and Municipal Employees (AFSCME), is a labor union that represents municipal employees nationwide. AFSCME provides numerous services to its local affiliates, including contract negotiation, and representation in grievance and

arbitration proceedings. AFSCME also provides some funds to its affiliates to pay local expenses incurred in providing these services.

Local 624 is the largest AFSCME local affiliate in New Mexico, representing municipal employees of the City of Albuquerque. The City, in turn, recognizes Local 624 as the exclusive representative of municipal employees for collective bargaining purposes. *See* Albuquerque, N.M., Code ch. 3, art. 2. City employees may join AFSCME by paying a fee, which is divided among the local, council, and national entities.

Employees who do not wish to join the union are not required to do so. *See* Albuquerque, N.M. Code § 3-2-4(A) ("City employees . . . have the right to refuse to join and participate in the activities of employee organizations."). Under federal law, however, if at least 50% of employees in the bargaining unit are union members, non-union members may be charged a fair share fee, which is their "proportionate share of the union's costs of negotiating and administering the collective bargaining agreement and adjusting the grievances and disputes of bargaining unit employees." *Id.*

*The First Appeal.* In 2000, thirteen City employees who chose not to join Local 624 filed suit under 42 U.S.C. § 1983 against the City, various City officials, Local 624 and AFSCME. The non-member employees claimed the defendants violated their First Amendment rights by requiring them to pay disproportionately high fair share fees. Both parties moved for summary

-4-

judgment. The district court ruled that Local 624's fair share notice was unlawful, but ruled in favor of the defendants on all other claims, including the constitutionality of the fair share fees.

In 2002, we reversed the district court's conclusion that the fair share fees were constitutional. Applying Supreme Court precedent, we concluded that at least some of the purposes for which the fees were collected could not be charged back to non-union members. *Wessel I*, 299 F.3d at 1196. In particular, we found the portion of the fees collected that went to AFSCME's national union "to serve as exclusive representative in other bargaining units . . . would not inure to the benefit of the members of the local organization and their collection violates the principles expressed [by the Supreme Court in *Lehnert*]." *Id.* Consequently, the portion of the fair share fee collected for these purposes was not chargeable to non-union employees. We also concluded a provision in the collective bargaining agreement allowing the City to be indemnified by the Union for services, which were later determined to be unconstitutional, was void as against public policy. *Id.* at 1199. We remanded to the district court to determine how much of the fair share fee, if any, could appropriately be charged to the plaintiffs. *Id.* at 1196.

*Remand.* On remand, the union defendants urged the district court to find that the entire fee was properly chargeable to non-members. The district court disagreed for two reasons. It first concluded that *Wessel I* had already determined at least some portion of the fair share fee had been charged for activities that did

not benefit Local 624. Second, the district court held that the defendants had "failed to satisfy their burden of proof with regard to any of the fair share fees collected from the [non-members]" because they did not show "what portion went to other locals and, conversely, . . . what portion went to expenses related to bargaining on behalf of Local 624." Op. at 16. Since the union defendants had failed to establish what portion of the fair share fees were chargeable to non-union members, the district court refunded the entire fee to the plaintiffs.

The district court also ordered the City to refund Local 624 payments made pursuant to the indemnification clause we found to be void in *Wessel I*.

## II. Analysis

The union defendants and the City raise two issues on this appeal. First, they claim the district court wrongly concluded that the entire fair share fee was not properly chargeable to Local 624. Second, they argue that the district court should not have ordered the City to refund the payments for litigation expenses paid by Local 624 under the indemnification provision. We address each argument in turn.

## A. Chargeability of the Fair Share Fee

The union defendants' primary argument is that the entire fair share fee was constitutionally permissible. In support of their argument, they presented testimony at the remand hearing that all of the services of AFSCME, as an exclusive bargaining representative at the national level, are also available to

-6-

Local 624 on an as-needed basis. Accordingly, they claim the entire fair share fee is properly chargeable to non-member employees. The union defendants also argue that our decision in *Wessel I* did not preclude the district court from reconsidering whether expenses related to exclusive bargaining were in fact a chargeable benefit to Local 624.

The district court rejected these arguments. The court concluded that *Wessel I* precluded relitigation of whether exclusive bargaining representation inured to the benefit of Local 624. The district court also found the union defendants had failed to meet their burden of showing what portion of the fair share fee was unconstitutional. Specifically, the district court found the union defendants (1) did not show that fair share fees were "spent only on activities that the union considered to be chargeable to non-members" [Op. at 11]; (2) collected funds for services that were not chargeable under Supreme Court precedent and our decision in *Wessel I*; and (3) charged for services provided at the national level too nebulous to benefit Local 624. The court further found the union defendants' argument that they could not apportion expenses for exclusive representation "lack[ed] credibility" as they had detailed information apportioning other chargeable services. *Id.*

1. *Scope of* Wessel I.

The union defendants' first argument is that *Wessel I* did not foreclose the possibility that the entire fair share fee was chargeable to the non-member employees.  We disagree.

Our previous decision considered "whether the fees collected in this case violated the . . . constitutional standard on extra-unit expenses" as articulated in *Lehnert v. Ferril Faculty Assoc.*, 500 U.S. 507 (1991).  *Wessel I*, 299 F.3d at 1196.  In *Lehnert*, the Supreme Court notes "[t]here must be some indication that the payment is for services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization."  500 U.S. at 524.  Applying and quoting *Lehnert*, we held "extra-unit expenses [are] not chargeable if they [are] 'unrelated to an objecting employee's unit.'"  *Wessel I*, 299 F.3d at 1196.  After reviewing the record, we found "some evidence in the record that a portion of the fees collected went to the national Union to '[serve] as exclusive representative in other bargaining units.'"  *Id.*  Rejecting the union defendants' argument that the entire fee was constitutional, we held:

> Such fees would not inure to the benefit of the members of the local organization and their collection violates the principles expressed in *Lehnert*.  We disagree with the district court's conclusion that the Union did not exceed the constitutional limitations on the types of expenses properly included in a fair share fee.

*Id.*  Consequently, we remanded the case to the district court "to hold a hearing to determine which fees are attributable to bargaining-related expenses in [Local

624] as distinguished from those which do not inure to the benefit of the local bargaining unit." *Id.*

We agree with the district court that *Wessel I* explicitly resolved the question of the chargeability of the entire fair share fee for sums collected for use by AFSCME as exclusive bargaining representative for other local unions. The panel's opinion in *Wessel I* was unambiguous. We stated that collection of fees for this purpose "violates the principles expressed in *Lehnert*," 299 F.3d at 1196, and remanded for necessary fact-finding on the amount of the overcharge. Accordingly, the district court did not err in its understanding of the scope of *Wessel I.*

### 2. Law of the Case

The union defendants argued below that the law of the case doctrine should not preclude them from showing their fees for exclusive bargaining services were properly chargeable to Local 624. On appeal, they argue the testimony at the remand hearing demonstrates that the panel in *Wessel I* was wrong in its holding that a portion of the fee was not properly chargeable. Again, we disagree.

Generally, "once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case." *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002). "Unlike res judicata, the [law of the case doctrine] is not an 'inexorable command,' but is to be applied with good sense." *United States v. Monsisvais*, 946 F.2d 114, 117 (10th Cir. 1991) (quoting *Major v.*

*Benton*, 647 F.2d 110, 112 (10th Cir. 1981)).  Accordingly, the doctrine is subject to three exceptions: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice."  *Grigsby*, 294 F.3d at 1219, n.4.  We read "these exceptions narrowly, requiring district courts to apply the law of the case unless one of the exceptions specifically and unquestionably applies."  *Monsisvais*, 946 F.2d at 117 (internal quotations omitted).

Here, only the first exception might be applicable.  Under this exception, "[c]ourts have generally permitted a modification of the law of the case when substantially different, new evidence has been introduced."  *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981).  The exception does not apply, however, where "the additional evidence provided . . . at the supplemental hearing was evidence [the proponent] had in its possession, but failed to produce, at the time of the original hearing."  *Monsisvais*, 946 F.2d at 117.

In *Wessel I*, the foundation for our holding was the conclusion that charges for AFSCME's service as exclusive bargaining representative for local unions other than Local 624 "would not inure to the benefit of the members of the local organization."  299 F.3d at 1196 (citing Aplt. App. at 51, 53, 154, 156).  On remand, the union defendants sought to counter this conclusion.  They offered testimony that the accounting description had no substantive significance and,

therefore, funds dedicated to these functions did benefit local unions. Essentially, AFSCME argues here that its services as national exclusive bargaining representative for other local unions are available to Local 624—and therefore chargeable to non-members.

This issue was addressed in *Wessel I*. In those proceedings, the non-member employees identified AFSCME's bargaining representative services as an example of a non-chargeable expense. They argued:

> The original and revised notices do not limit expenses chargeable to nonmembers to the costs of negotiating and administering the collective bargaining agreement with the City and adjusting the grievances and disputes of bargaining unit employees. Both expressly state that chargeable expenses include "[s]erving as exclusive representative in other bargaining units."

*Wessel I*, Aplt. App. at 209. In response, the union defendants contended:

> Local 624 admits that the original and revised notice calculated the chargeability percentage based on expenditures germane to collective bargaining included, where appropriate, expenditures related to "[s]erving as exclusive representative in other bargaining units." Local 624 disputes any implication that such expenditures are not authorized . . . .

*Id.* at 253.

We are not persuaded on the basis of this prior record that the union defendants on remand have presented substantially different evidence such that a departure from the law of the case is warranted. *Grigsby*, 294 F.3d at 1219 n.4; *Major*, 647 F.2d at 112. Accordingly, the district court did not err on remand in relying on our decision in *Wessel I*.

-11-

Having said this, we note the district court did accept testimony regarding the union defendants' treatment of exclusive bargaining expenses. The court concluded the evidence did not show such expenses were properly chargeable to non-union members under *Lehnert*. Even if the law of the case doctrine did not apply, we are bound by the district court's factual findings in this regard. We thus turn to the evidence produced on remand.

*3. Burden of Proof*

In a thorough written order, the district court concluded the union defendants had not satisfied their burden of showing that the fair share fees were collected to finance costs associated with "otherwise chargeable activities" consistent with our decision in *Wessel I*. We agree for two reasons. First, the record demonstrates the union defendants failed to produce any evidence showing what portion of the fair share fee funded AFSCME's work as exclusive bargaining representative. Second, the union defendants' witnesses failed to convince the district court that those funds used for exclusive representation were also available to Local 624 and therefore chargeable. Our review of the district court's factual determinations is for clear error. *Nieto v. Kapoor*, 268 F.3d 1208, 1221 (10th Cir. 2001).

The primary reason the district court found the entire fair share fee should be refunded was the union defendants' inability (or unwillingness) to separate out the costs of serving as exclusive bargaining representative from their total

-12-

expenditures. Under *Lehnert*, "the union bears the burden of proving the proportion of chargeable expenses to total expenses." 500 U.S. at 524.

On remand, the union defendants' witnesses conceded they could not "determine the cost of serving as exclusive bargaining representative in other bargaining units." Aplt. App. at 219–20. Based on this testimony, the district court concluded the union defendants' attempt to justify their inability to meet their burden "does not provide a defense for not meeting it." Op. at 14. Because of the lack of evidence, "[t]he portion that relates to the union serving as the exclusive bargaining representative of locals other than Local 624 was not properly collected from non-members and must also be refunded." Op. at 15. It was undisputed that some portion of the fair share fee went to fund AFSCME's work as exclusive bargaining representative. Since the union defendants did not identify the various components that made up the fees, and because they had the burden of proof, the court ordered them to refund the entire amount. We agree with this conclusion.

Even if we were tempted to depart from the law of the case and consider the union defendants' testimony that exclusive bargaining expenses were properly chargeable, we would still affirm. The district court concluded that the union defendants' testimony lacked credibility and specificity such that it could not credit the explanation of the union defendants' interpretation of exclusive bargaining services. "We give the district court's determinations regarding the

-13-

credibility of witnesses great deference." *Dill v. City of Edmond*, 155 F.3d 1193, 1211 n.9 (10th Cir. 1998).

We agree with the district court that the lack of explanation undermined the union defendants' claims. First, the district court found that the union defendants had "not shown with any persuasiveness that the money in the common fund into which fees ostensibly chargeable to non-members were placed was spent only on activities that the union considered to be chargeable to non-members." Op. at 11. Second, the court found that some of the fees pooled and presumably available to Local 624 "were collected in order to recoup expenses that were not chargeable to non-members in the first place. . . . [E]armarking the fees for a chargeable purpose does not purge their unconstitutional taint when the fees are collected to finance non-chargeable activities." *Id.* at 12. Third, as discussed above, the district court discounted the explanatory testimony of the union defendants since it was not persuaded that the Union could not separately account for fees expended on exclusive bargaining representation. *See* Op. at 13–14. Finally, the district court was troubled by the fact that the Union created a category of chargeable expenses it could neither explain in detail nor quantify.

> Did the union simply make up the amount of the fair share fee? Did it guess as to what the amount of the fee should be? The union was readily able to identify its chargeable activities when it billed non-members for them. It seems particularly convenient that it is suddenly unable to identify which of the fees are those the Court of Appeals held were improperly collected.

-14-

Op. at 14.

In sum, the district court concluded it was "the union's burden to show that the fair share fees were collected to finance 'cost[s] associated with otherwise chargeable activities.' *Lehnert*, 500 U.S. at 524. This it has not done." Op. at 15. While we might have drawn different inferences from this evidence, we cannot conclude the district court clearly erred in finding the union defendants had not met their burden of proof.[1]

## B. *Indemnification and Restitution*

In a separate ruling, the district court ordered the City to return payments it received under the indemnification provision found unlawful in *Wessel I*. Both the union defendants and the City challenge the propriety of restitution since the district court never made a finding that the City's policies violated the First Amendment. Before we address the merits of this claim, we must first clarify what is and is not at stake here.

---

[1] The district court articulated another reason for concluding the union defendants evidence did not satisfy *Lehnert*: the fact that "union employees gain . . . experience . . . does not justify the union charging non-members for otherwise non-chargeable extra-unit activities." Op. at 13. The court reasoned that this expertise would not "ultimately inure to the benefit of the members of the local union," as required by *Lehnert*. *See* 500 U.S. at 524.

We disagree—such expertise could inure to Local 624's benefit at some later date, even if it does not do so "in any particular membership year." *See id.* "The essence of the affiliation relationship is the notion that the parent will bring to bear its often considerable economic, political, and informational resources when the local is in need of them." *Id.* at 523.

-15-

In *Wessel I*, we held the indemnification agreement between the City and Local 624 was void as contrary to public policy because it would allow the City to seek indemnification "for its own unconstitutional practices and policies." 299 F.3d at 1199 n.4. In particular, the agreement required Local 624 to indemnify the City "against any and all claims, demands, suits or other forms of liability, including payments of reasonable attorney fees and costs . . . for any claim or challenge to the imposition of an agency fee." *Id.* at 1197. Pursuant to this provision, Local 624 had reimbursed the City for some of its legal expenses in this case. Relying on our holding in *Wessel I*, the district court ordered the City to return to Local 624 the indemnification it had received. [Op. at 22.] The court also enjoined the City from seeking future indemnification from Local 624 under this provision. [*Id.*]

Neither the City nor Local 624 challenge the prospective injunction—they argue only that the court erred by ordering restitution of payments made to the City for the cost of litigation in these matters. Thus, this is not a case where we are asked to prospectively "permit enforcement of those [voided] provisions," as plaintiffs argue. Aple. Br. at 38. Rather, the only issue before us is whether restitution is required where one party has performed on a contract that was later voided as contrary to public policy. The non-union employees argue that restitution is also necessary here to prevent the City from benefitting from the voided contractual provision.

The parties agree the general rule is that restitution is not proper where one party has performed on a contract later voided for public policy reasons. *See, e.g., Hogue v. Superior Utils.*, 210 P.2d 938, 940 (N.M. 1949); Restatement (Second) of Contracts § 197. Under this rule, the court "will simply leave both parties as it finds them, even though this may result in one of them retaining a benefit that he has received as a result of the transaction." *Id.* § 197, cmt. a.

This rule is subject to various exceptions. *Hogue*, 210 P.2d at 940 (stating that "where the public interest is involved . . . affirmative relief will not be denied, although one of the guilty parties may benefit"); Restatement (Second) of Contracts § 197 (authorizing restitution in all cases where "denial of restitution would cause disproportionate forfeiture"); *id.* § 198(b) (authorizing restitution where the party seeking restitution "was not equally in the wrong with the promisor"); *id.* § 199(b) (authorizing restitution where the claimant "did not engage in serious misconduct" and "allowance of the claim would put an end to a continuing situation that is contrary to public policy").

A more recent formulation of the exceptions identified in the Restatement (Second) of Contracts is found in the Restatement (Third) of Restitution, currently under consideration by the American Law Institute.[2] It points to restitution as appropriate in circumstances where one party is *unjustly enriched* at

---

[2] In relation to the Restatement (Second) of Contracts, cited above, this section "reformulates the applicable rules without proposing to alter specific outcomes." Restatement (Third) of Restitution § 32 cmt. a (T.D. No. 3, 2004).

the expense of the other, even "under an agreement that is illegal or otherwise unenforceable for reasons of public policy." § 32 (T.D. No. 3, 2004).[3] Another circumstance where restitution might be appropriate is where it will *deter* future misconduct. The draft Restatement suggests courts look to a variety of factors to assess the need for restitution, including (1) the nature of the illegality; (2) the extent of the party's culpability; (3) whether illegal conduct was central or merely tangential to the performance of the contract; and (4) the strength of the deterrent effect of the decision. *Id.*

The question here then is whether restitution is necessary to (1) prevent unjust enrichment of the City, or (2) deter future misconduct by the City or other municipalities. The first factor does not appear to apply: the union defendants are not seeking reimbursement, rather the non-member employees are seeking disgorgement of the indemnification proceeds.

---

[3] It reads in full:

(1) Restitution will be allowed, whether or not necessary to prevent unjust enrichment, if restitution is required by the policy of the underlying prohibition.
(2) Restitution will also be allowed, as necessary to prevent unjust enrichment, if the allowance of restitution will not defeat or frustrate the policy of the underlying prohibition. There is no unjust enrichment if the claimant receives the counterperformance specified by the parties' unenforceable agreement.
(3) Restitution will be denied, notwithstanding the enrichment of the defendant at the claimant's expense, if a claim under subsection (2) is foreclosed by the claimant's inequitable conduct.

Restatement (Third) of Restitution § 32 (T.D. No. 3, 2004)

The deterrence rationale might apply, however. That rationale may generally be appropriate in at least two circumstances in the context of unconstitutionally collected fair share fees. First, where the City knowingly participated or acquiesced in the unconstitutional conduct of the union defendants. Second, even if the City did not knowingly allow the violation, where it failed to exercise reasonable prudence to ensure the union defendants' fair share procedures were constitutional.

*Knowing Participation.* The first consideration is whether the City knowingly participated or acquiesced in the constitutional violation. In *Wessel I*, we declared the indemnification provision void on the ground that the City should not be indemnified "for its own unconstitutional practices and policies." *Wessel I*, 299 F.3d at 1199. We also held "[t]hat a public employer has certain obligations within the fair share deduction framework established by courts." *Id.* at 1197. These duties include a duty to establish procedures that protect dissenters' rights, minimize impingement on non-union employees' constitutional rights, and ensure that the union's notice is adequate. *See id.* at 1198. Furthermore, we stated that "[i]f the City consistently made no effort to ensure that the Union's fair share procedures complied with [*Chicago Teachers Union Local, No. 1 v. Hudson*, 475 U.S. 292 (1986)], such a failure would likely be cognizable under § 1983 and covered by the indemnification." *Id.* at 1199 n.4.

Because the breadth of the indemnification clause would cover the types of violations described above, we found it contrary to public policy in *Wessel I*. We did not conclude, however, that the City had violated the First Amendment in its implementation of its fair share policies. We found only that the indemnification provision would allow payments for knowing violations of the constitutional notice requirements of *Hudson*, or conscious disregard of its basic fair share procedures. Thus, we did not conclude as a factual matter that the City had knowingly participated or acquiesced in the union defendants' First Amendment violation. Nor did the district court make a finding on remand that the City violated the First Amendment.

*Reasonable Prudence.* On this record, however, the district court concluded there is some support that the second consideration had been met—the City failed to exercise reasonable prudence in ensuring the union defendants' fair share program satisfied constitutional standards. The district court found the non-member employees had "suffered irreparable injury . . . due to the City's failure to fulfill its obligation to protect them." Op. at 21. It concluded "inasmuch as the legally inadequate fair share notice and the collection of the fair share fees violated the Plaintiffs' First Amendment rights, [] the City could not possibly have fulfilled its obligation to 'provide procedures that minimize that impingement [on non-members' First Amendment rights] and. . . facilitate a

-20-

nonunion employee's ability to protect his rights.'" Op. at 20 n.5 (quoting *Hudson*, 475 U.S. at 307 n.20).

In reaching this conclusion on remand, the district court did not apply the legal framework discussed above. Its conclusions were made in the context of a motion for preliminary injunction that principally sought prospective relief. In light of our discussion of the applicable framework, it is now appropriate for the district court to make the equitable determination of restitution in the first instance. We therefore remand for further proceedings on whether restitution should be ordered in light of the principles discussed above.

## III. Conclusion

For these reasons, we REMAND for further proceedings on the issue of restitution and AFFIRM all other aspects of the district court's decision.