Christine A. CUMMINGS; Janet Taylor Darvas; Richard K. Dehart; Christopher Garbani; Patricia A. McCumsey; Daniel Nowalis; and Claudia Stewart, Plaintiffs–Appellees/Cross–Appellants,

v.

Kathleen CONNELL, Controller, State of California; Marty Morgenstern, Director, California Department of Personnel Administration, Defendants/Cross–Appellees,

and

California State Employees Association, Local 1000, Service Employees International Union, AFL–CIO–CLC, Defendant–Appellant/Cross–Appellee.

Nos. 01–16735, 01–16819, 01–17445, 01–17450.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2002.

Filed Jan. 9, 2003.

W. James Young, National Right to Work Legal Defense Foundation, Inc., Springfield, VA, for the plaintiffs-appellees/cross-appellants.

Leslie R. Lopez, Deputy Attorney General, Office of the State Attorney General, Sacramento, CA, for defendant/cross-appellee Kathleen Connell.

Warren C. Stracener, Assistant Chief Counsel, Department of Personnel Administration, State of California, Sacramento, CA, for defendant/cross-appellee Marty Morgenstern.

Eileen B. Goldsmith (argued) and Jeffrey B. Demain, Altshuler, Berzon, Nussbaum, Rubin & Demain, San Francisco, CA, for the defendant-appellant/cross-appellee.

Before HAWKINS, GRABER, and TALLMAN, Circuit Judges.

## OPINION

MICHAEL DALY HAWKINS, Circuit Judge.

It is settled law that a union may charge nonunion employees certain fees to pay for their "fair share" of the union's cost of negotiating and administering a collective bargaining agreement. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). In *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 310, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), the Supreme Court established certain safeguards in connection with the collection of such fees, including "an adequate explanation of the basis for the fee." This appeal involves the adequacy of the June 1999 "*Hudson* notice" prepared by the California State Employees Association (the "Union").

The Union is the exclusive representative for nine bargaining units of California state employees. After several years without collective bargaining agreements ("CBAs") in place, in March 1999, the Union entered into CBAs allowing the state employer to deduct "fair share" fees from plaintiffs' paychecks and forward the funds to the Union. In April 1999, the Union sent a notice to nonmembers informing them of the "fair share" deductions. The state, through its controller (defendant Kathleen Connell), commenced making the deductions the same month. It is undisputed that the April notice was not intended to be a *Hudson* notice.

In June 1999, the Union sent a second notice that purported to comply with *Hudson*. The notice set the "fair share" fee (95% of union dues) and provided an opportunity for the nonunion employees (also called "fee payers") to object to paying for activities not germane to collective bargaining, automatically reducing the fee to 82% of union dues. This notice additionally explained how a fee payer could challenge the fee calculation by requesting arbitration. These procedures are not challenged here; rather, the dispute is over whether the notice included sufficient information for fee payers to decide to object and challenge the fee calculation.

The June 1999 notice included a report on the Union's 1998 expenditures and divided them into three categories: (1) those chargeable to fee payers, (2) those not chargeable to fee payers, and (3) those partially chargeable to fee payers. The report further broke down the expenditures into approximately 50 subcategories. The notice, however, did not contain a copy of the complete auditor's report, but instead informed fee payers that:

> The Report itemizes and describes the major categories of expenditures by the [Union]. The amounts attributed to these categories of expenditures are taken from an independent audit and supporting documentation of [the Union's] 1998 financial records contained in the Financial Statements prepared by Gibson and Company, Inc., a certified public accounting firm.

The notice also informed fee payers that a copy of the audit would be provided upon request.

Plaintiffs filed their complaint in November 1999, asserting that the April and June notices were constitutionally inadequate under *Hudson* because they failed to include a copy of the auditor's report. In December, the district court granted the plaintiffs' motion to certify a class action. In January 2000, the Union mailed a copy of the audit to all fee payers. This notice was still found to be deficient, however, because it did not extend the time for fee payers to object.

Still later in January 2000, the Union again tried to fulfill the plaintiffs' demands

and sent a new amended notice that cross-referenced both the June 1999 notice and the auditor's report and extended the period for nonmembers to challenge the fee calculation. Although the district court noted that the Union had made a good faith effort to correct defects in the earlier notices and that the court itself may have caused the Union to use the "piecemeal" approach of correcting the defects, the court ultimately concluded that these notices still did not comply with *Hudson* because too much time had elapsed for the cross-references to be sufficient.

Finally, in May 2000, the Union sent another "integrated" notice that included all the information from the previous notices, reopened the objection/challenge period, and accommodated an additional request by plaintiffs for an "allocation audit." It is undisputed that this notice complied with *Hudson*. The Union's calculation was then challenged through arbitration, and the arbitrator set the fee for objecting fee payers at 73% of dues for the period from April 1999 to June 2000. Any fee payer who had objected to any of the notices from April 1999 to May 2000 then received a refund of the nonchargeable amount of the fee, with interest, retroactive to April 1999.

In May 2001, the district court ruled on cross-motions for summary judgment. Finding that all notices except the May 2000 notice were deficient under *Hudson*, the district court ordered the Union to refund the nonchargeable portion of the fee to all fee payers, including those who did not object to any of the notices. The court granted the Union's motion for summary judgment on the plaintiffs' challenge to two expenditures charged to fee payers. The court also rejected the plaintiffs' request for a permanent injunction and found they lacked standing to challenge an indemnification clause in the CBAs.

Plaintiffs sought more than $200,000 in attorneys' fees and costs. Because the plaintiffs were only partially successful in their litigation, the court reduced the number of hours for which they reasonably could recover. The court ultimately awarded only about $67,000 in fees, but awarded nearly full costs of $32,711.03. This appeal and cross-appeal followed.

## I. The June 1999 Hudson Notice

### A. The Union's Appeal

The Union appeals the district court's determination that its first *Hudson* notice was deficient because it failed to include a copy of the auditor's report. The Union contends that the concerns of *Hudson* were satisfied by its notice, which included a detailed breakdown of expenses by category, informed the nonmembers that the figures had been audited, and offered to provide a copy of the report upon request. We review de novo the district court's grant of summary judgment on the sufficiency of the *Hudson* notice. *See Knight v. Kenai Peninsula Borough Sch. Dist.*, 131 F.3d 807, 812(9th Cir.1997).

We find that the Union's 1999 notice did not satisfy the dictates of *Hudson*. Although it informed nonmembers that the figures in the notice were derived from an audited statement, it did not include any "independent verification" of this fact. *Hudson* did not say merely that the expenditures must be audited, but that "adequate disclosure surely would include … *verification* by an independent auditor." 475 U.S. at 307 n. 18, 106 S.Ct. 1066 (emphasis added). Although not expressly addressing the question before us, we recently mirrored this requirement from *Hudson* and explained that, although a formal audit is not always required, "the union must provide a statement of its chargeable and nonchargeable expenses, together with an independent verification

that the expenses were actually incurred." *Harik v. Cal. Teachers Ass'n,* 298 F.3d 863, 866 (9th Cir.2002).

The Union argues that this circuit previously suggested that *Hudson* requires the union only to communicate that the figures have been audited, relying on our decision in *Knight,* 131 F.3d at 812–13. In *Knight,* the union provided nonmember employees with an unaudited financial report that was generated from two audited reports. *Id.* at 813. With the help of appellate briefing, the court was able to determine that the unaudited figures were indeed based on two sets of audited figures, but found that the notice was insufficient because nonmembers "were not provided with sufficient direction to be able to determine that [the union's] expenditures were audited." *Id.*

We do not read *Knight* to say that *all* Hudson requires is an indication that reports have been audited, as the Union argues; rather, as the Union admits in its brief, the case is silent as to whether the notice must contain the auditor's report or some other type of verification. Read in context, we believe *Knight* to hold that *even if* that were all that *Hudson* required, the notice in that case was still insufficient because the fee payers could not even have determined that, at a minimum, the expenditures had been audited. *See id.* We therefore do not find our recent pronouncement in *Harik* regarding the need for inclusion of independent verification in the notice to be inconsistent with *Knight.*

Other circuits have required more than a simple statement that the figures provided have been audited. As the Tenth Circuit recently observed, the purpose of verification by an independent auditor is to give nonmembers assurance that the reviewed books really reflect the transactions that occurred and to give them information to make their own judgments about whether to object or to challenge the Un-

ion's calculations. *Wessel v. City of Albuquerque,* 299 F.3d 1186, 1193–94 (10th Cir. 2002). The court went on to hold that, "[w]ithout the auditor's reports, nonmembers could not have sufficient information to make such a determination. A simple statement that the Union's expenses were audited conveys minimal, if any, assistance to nonmembers attempting to decide whether to challenge the Union's determination." *Id.* at 1194. The Sixth Circuit also appears to require that the notice include some verification or certification by the independent auditor. *See, e.g., Damiano v. Matish,* 830 F.2d 1363, 1370 (6th Cir.1987) ("*Hudson* also mandates the verification of the union's calculations ... by means of an independent auditor. Moreover, the union must provide this information to each employee, without formal request ...." (citations omitted)); *Tierney v. City of Toledo,* 824 F.2d 1497, 1504 (6th Cir.1987) ("[A]ll nonmembers must receive an adequate accounting, certified by an independent auditor and setting forth the major categories of the union's budgeted expenses....").

The Union's June 1999 notice essentially required the plaintiffs either to accept that the expenditures were indeed audited or to go to the trouble of requesting a copy of the audit report to verify the Union's summary. The purpose of the *Hudson* notice is to allow nonmembers to "gauge the propriety of the union's fee," 475 U.S. at 306, 106 S.Ct. 1066, and the Court clearly contemplated that such a determination would be based on information contained in that notice, *see id.* at 307 n. 18, 106 S.Ct. 1066. In light of the purposes of a *Hudson* notice, the language in *Hudson* itself, and the caselaw from this and other circuits, we agree with the district court that the representation in the June 1999 notice that the figures had been audited was not sufficient under *Hudson.*

■ In so holding, however, we do not mean to suggest that a full copy of the audit must always be included in the notice. Indeed, as we recently held, a full-blown audit is not always required under *Hudson*. *Harik*, 298 F.3d at 869. In a case such as this one, in which the Union contends that the relevant figures were simply lifted from an audited financial statement, it should suffice for the notice to include a certification from the independent auditor that the summarized figures have indeed been audited and have been correctly reproduced from the audited report.[1]

## B. *The Plaintiffs' Cross Appeal*

■ On cross-appeal, the plaintiffs contend that a *Hudson* notice should not only include some independent verification of expenditures, but that the notice must include an "allocation audit." In other words, the auditors should verify not only that money has been spent in the way the Union claims it has, but also that the Union has properly allocated its expenditures between chargeable and nonchargeable expenses.

Plaintiffs rely principally on a district court decision, *Mitchell v. Los Angeles Unified School Dist.*, 739 F.Supp. 511, 514–15 (C.D.Cal.1990), where the court said:

> [M]ere verification of total expenditures by category would be meaningless, inasmuch as it plays no role in the computation of the agency fee. The critical data is the ratio between chargeable vs. nonchargeable expenses, because it is this ratio that is used to compute the percentage of union dues properly assessed as an agency fee. Thus, the Court con-

cludes that the independent verification requirement must apply to the allocation of chargeable and nonchargeable expenditures in a union's major expense categories.

*Mitchell*, however, was decided before a number of Ninth Circuit cases that discuss *Hudson* and its requirements. Although no opinion in this circuit has specifically addressed the issue of an allocation audit, language in a number of our decisions seems to foreclose plaintiffs' argument, thereby rejecting the requirements of *Mitchell*. For example, in the recent *Harik* case, we held that, "while a formal audit is not required, the union must provide a statement of its chargeable and nonchargeable expenses, together with an independent verification *that the expenses were actually incurred*." 298 F.3d at 866 (emphasis added). This passage certainly indicates that, although the Union must provide a breakdown between chargeable and nonchargeable expenses, the audit does not verify that the allocation is correct, but that the expenses were indeed spent the way the Union claims.

Further confirming this interpretation, *Harik* goes on to quote from an earlier decision in which we wrote that "[w]hat is required is a real independent verification of the financial data in question to make sure that expenditures are being made the way the union says they are." *Id.* at 869(quoting *Prescott v. County of El Dorado ("Prescott I")*, 177 F.3d 1102, 1107 (9th Cir.1999)). Moreover, in *Prescott I*, we gave a concrete example of the role of independent verification, which further confirms that the auditor's role is more limited than plaintiffs urge: "[W]as an

---

1. If a union must perform some additional calculations or adjustments in order to provide the requisite notice to nonmembers (such as adjusting a national union's breakdown of financial information to a local level, as in

*Knight*, 131 F.3d at 813), then the certification may need to be more detailed and confirm that the local union has performed the mathematical adjustments correctly.

amount supposedly directed to 'x' for negotiation expenses really dispersed to him, or did it go to 'y', who is union lobbyist?" 177 F.3d at 1107.

In addition, a number of other circuits have expressly rejected the notion that *Hudson* requires an allocation audit. In *Andrews v. Education Association of Cheshire*, 829 F.2d 335, 340 (2d Cir.1987), the Second Circuit held that *Hudson* does not require the auditor to verify the proper categorization of expenditures as chargeable or nonchargeable, but merely "to ensure that the expenditures which the union claims it made for certain expenses were actually made for those expenses." The court noted that a different interpretation "would have the auditor making a legal, not an accounting, decision regarding the appropriateness of the allocation of expenses." *Id.; accord Gwirtz v. Ohio Educ. Ass'n*, 887 F.2d 678, 682 n. 3 (6th Cir. 1989); *Ping v. Nat'l Educ. Ass'n*, 870 F.2d 1369, 1374 (7th Cir.1989).

The Fourth Circuit also explained that it would make little sense for the auditor to undertake verifying the allocation when the union would have to justify its allocation when challenged by a fee payer regardless of the auditor's opinion:

> The appellants' plea [for an allocation audit] is tantamount to requiring the auditor to give a second legal opinion on whether categories were properly related to collective bargaining. This would require legal interpretations of several complex Supreme Court decisions by persons not professionally qualified to give them.... The Union's position is just as well reviewed by the employees. Moreover, if the employees object, the Union will be called upon to justify further its position.

*Dashiell v. Montgomery County*, 925 F.2d 750, 756(4th Cir.1991).

As noted above, we believe the plaintiffs' claim has already been foreclosed by various decisions in this circuit. To the extent any doubt remains, we expressly join the Second, Fourth, Sixth and Seventh Circuits and reject plaintiffs' claim that *Hudson* requires an allocation audit.

## II. Remedy

To remedy the inadequacies of the initial June 1999 notice, the district court ordered restitution of the nonchargeable portion of the fee to all class members, whether or not the nonmember employee had objected to any of the notices. The Union contends this remedy goes too far; the plaintiffs contend it does not go far enough. We review de novo a district court's legal conclusion that a particular remedy is available. *EEOC v. Wal-Mart Stores, Inc.*, 156 F.3d 989, 992(9th Cir. 1998).

The plaintiffs' claim is easily disposed of, as it is contrary to clearly established law in this circuit. *See Prescott I*, 177 F.3d at 1109–10(rejecting argument that the proper remedy should be a refund of *all* fees collected prior to compliance with *Hudson*). In an attempt to evade the holding of *Prescott I*, the plaintiffs argue that *Prescott I* is inconsistent with this circuit's earlier decision in *Knight*, in which the court noted that the union had not complied with *Hudson* and "was not entitled to the fees that it collected." 131 F.3d at 815. Plaintiffs suggest we should simply ignore *Prescott I* and apply *Knight*. However, it is not the practice of this circuit to simply ignore an inconsistency, but rather to take the case en banc to resolve a conflict. *See* Fed. R.App. P. 35(a)(1).

More to the point here, however, the cases are consistent. *Prescott I* expressly addressed the quoted phrase in *Knight* and explained that, although *Knight* said the union was not entitled to the full amount of fees it collected, *Knight* did *not* say the union could not receive any fees

whatsoever. 177 F.3d at 1109. In support of its interpretation of Knight, Prescott I also pointed out that, instead of simply ordering complete restitution, the court in *Knight* remanded, leaving " 'the measure of damages ... for the district court to determine in the first instance.' " *Id.* (quoting *Knight*, 131 F.3d at 815). The district court thus properly applied *Prescott I* and rejected the plaintiffs' claim for full restitution.

We agree with the Union, however, that the district court went too far in ordering partial restitution to all class members. Ordinarily, if there is a proper *Hudson* notice, the employee has the burden to object to paying the full nonmember fee, and only then is entitled to a refund of the nonchargeable portion of the fee. *See Hudson*, 475 U.S. at 306 n. 16, 106 S.Ct. 1066 ("The nonmember's 'burden' is simply the obligation to make his objection known."); *Abood*, 431 U.S. at 238, 97 S.Ct. 1782(" 'dissent is not to be presumed' ") (quoting *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 774, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961)); *see also Mitchell v. L.A. Unified Sch. Dist.*, 963 F.2d 258, 262–63 (9th Cir.1992) (rejecting argument that because only nonmembers were involved in suit, they should be presumed to object to paying full fair share fee).

In this case, it is undisputed that the Union's May 2000 notice complied with *Hudson*. If a nonmember objected to *any* of the notices between April 1999 and May 2000, the Union refunded the noncharge-able portion of the fee, with interest, retroactive to the first paycheck deduction. Accordingly, the Union argues that it was improper for the district court to order it to refund the nonchargeable portion to all class members, including those who did not affirmatively object to even the proper *Hudson* notice in May 2000.

Plaintiffs contend that the Union cannot "unring the bell" by providing a correct notice thirteen months after it began deducting fees and that a refund of the nonchargeable portion is the minimum permitted by our caselaw. *See Knight*, 131 F.3d at 815; *Prescott I*, 177 F.3d at 1109. However, in neither *Knight* nor *Prescott I* did the union ever issue a corrected *Hudson* notice with a new opportunity for nonmembers to object, and thus they are inapposite to this situation.

We do, however, find it helpful to consider cases involving private-sector unions that must issue notices similar to those required by *Hudson* pursuant to *Communications Workers of America v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988). If a *Beck* notice is defective, the union must send a corrected notice, and issue retroactive refunds, with interest, to fee payers *who object to the corrected notice*. *Rochester Mfg. Co.*, 323 N.L.R.B. 260, 262, 1997 WL 113885 (1997), *aff'd mem. Cecil v. NLRB*, 194 F.3d 1311 (6th Cir.1999), *cert. denied*, 529 U.S. 1066, 120 S.Ct. 1671, 146 L.Ed.2d 481 (2000); *see also United Food & Commercial Workers Union, Local 1036 v. NLRB*, 249 F.3d 1115, 1120 (9th Cir.2001), *reinstated in pertinent part*, 307 F.3d 760, 774 n. 21 (9th Cir.2002) (en banc) (remedy for improper "welcoming letter" was to send corrected letter to those who received defective notice; refunds should be made only to those who receive corrected notice and object).[2]

---

**2.** Although not directly on point, caselaw in other circuits is also generally in harmony with this view. In a recent Tenth Circuit case, the union issued a corrected notice and refunded the nongermane fees to the plaintiffs (who had apparently all objected to the initial notice). *Wessel*, 299 F.3d at 1193, 1194. The court noted that the district court correctly awarded nominal damages to the plaintiffs for the initial incorrect notice and that plaintiffs were entitled to no further relief. *Id.* at 1194; *see also Weaver v. Univ. of Cincinnati*, 970 F.2d 1523, 1532 (6th Cir.1992) (noting that

In this case, the district court found that the plaintiffs had no burden to object because the deductions were made "in the absence of a reasonably prompt notice that satisfied the requirements of *Hudson*." It is true that a good deal of time elapsed between the initial paycheck deduction and the proper *Hudson* notice. But this does not mean the Union was intentionally dragging its feet. It issued a notice in June 1999 that it believed complied with *Hudson*. Plaintiffs filed suit in November, contesting the adequacy of that notice. The Union issued two more notices in January 2000 in an attempt to comply with *Hudson*, even though the district court eventually found these lacking as well. The district court's order even acknowledges that the Union had made good faith attempts to correct the notice and that the district court itself may have created the "piecemeal" approach to the notices.

 The purpose of the *Hudson* notice is to provide fee payers with adequate information so that they may decide whether to object or to challenge the Union's calculation. *See Hudson*, 475 U.S. at 306, 106 S.Ct. 1066. In this case, the nonmembers all eventually received notices with sufficient information under *Hudson*, and a renewed opportunity to object and receive their money back with interest. We fail to see how plaintiffs suffered any compensable harm (aside from nominal damages) from the initial defective notice. On these facts, we hold that the May 2000 notice was adequate to renew the burden on the plaintiffs to object, and ordering a refund to nonobjecting plaintiffs was therefore overbroad. We stress, however, that ordinarily a lapse of thirteen months before issuing an adequate *Hudson* notice would be unacceptable, but in this case we place great signifi-

until proper *Hudson* notice is issued, employee will be allowed subsequent opportunities to

cance on the district court's finding that the Union was acting in good faith and on its concession that the court itself may have caused the delay in the Union's issuing the ultimately acceptable notice.

## III. Class Certification

 We review a district court's decision to grant or deny class certification for abuse of discretion. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended* 273 F.3d 1266 (9th Cir.2001). The Union contends that the district court abused its discretion by certifying the class because the plaintiffs are not adequate class representatives. Specifically, the Union argues that the named plaintiffs' interests are antagonistic to those of the class because the plaintiffs seek full restitution of *all* fees paid, a remedy that is "punitive insofar as it [seeks] to deprive the union of fees to which it was, doubtlessly, entitled." *Prescott I*, 177 F.3d at 1109.

The Seventh Circuit found that pursuit of such a remedy created a "potentially serious conflict of interest within the class," justifying a refusal to certify a class. *Gilpin v. Am. Fed. of State, County, and Municipal Employees*, 875 F.2d 1310, 1313 (7th Cir.1989). The court explained:

> Two distinct types of employee will decline to join the union representing their bargaining unit. The first is the employee who is hostile to unions on political or ideological grounds. The second is the employee who is happy to be represented by a union but won't pay any more for that representation than he is forced to. The two types have potentially divergent aims. The first wants to weaken and if possible destroy

object).

the union; the second, a free rider, wants merely to shift as much of the cost of representation as possible to other workers, i.e., union members. The "restitution" remedy ... is consistent with—and only with—the aims of the first type of employee.... Not only would the "restitution" ... confer a windfall on the nonunion employees but it might embarrass the union financially. Yet those nonunion employees who, while not wanting to pay more (and perhaps even wanting to pay less) than their "fair share" fees, have no desire to ruin the union or impair its ability to represent them effectively might not want so punitive a remedy.

*Id.* The Fourth and Sixth Circuits have also upheld a denial of class certification on similar grounds. *Weaver v. Univ. of Cincinnati,* 970 F.2d 1523, 1530–31 (6th Cir.1992); *Kidwell v. Transp. Communications Int'l Union,* 946 F.2d 283, 305–06 (4th Cir.1991).

The district court recognized that this case presents concerns similar to the ones addressed in *Gilpin.* However, the court also noted that the full restitution remedy was clearly unavailable under this circuit's precedent and that the other remedies sought did not create a conflict between class members. The court also pointed out that the Union presented no evidence that an actual conflict existed among class members. The court thus determined that the conflict was too speculative at the time to prevent finding the named plaintiffs to be adequate representatives. The court, however, remained willing to reconsider and decertify the class if the plaintiffs continued to pursue the remedy or there was evidence of an actual conflict.

We believe that the district court's approach was entirely appropriate. As discussed above, the district court was correct that the "punitive" remedy of full restitution is precluded in this circuit by

existing caselaw. *Prescott I,* 177 F.3d at 1109–10. Therefore, the potential conflict discussed in *Gilpin* is not truly present in this case. Although the plaintiffs may seek to change the current rule through the en banc process or by petitioning the Supreme Court, the district court correctly remained willing to reconsider and decertify the class if a conflict should develop. Class certification is not immutable, and class representative status could be withdrawn or modified if at any time the representatives could no longer protect the interests of the class. *Soc. Servs. Union, Local 535 v. County of Santa Clara,* 609 F.2d 944, 948–49 (9th Cir.1979).

Furthermore, this circuit does not favor denial of class certification on the basis of speculative conflicts. *See id.* at 948 ("Mere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification."); *see also Blackie v. Barrack,* 524 F.2d 891, 909 (9th Cir.1975) (noting that class members might have differing interests at later stages of litigation, but that "potential conflicts" do not present a valid reason for refusing to certify a class). The Union produced no evidence that class members actually possess opposing views regarding the pursuit of the punitive remedy. Without some evidence of an actual conflict, the district court did not abuse its discretion by granting class certification.

## IV. Judgment Against Connell and Morgenstern

█ Plaintiffs contend that the district court erred by refusing to enter judgment against defendants Kathleen Connell, the State Controller of California, and Marty Morgenstern, Director of the Department of Personnel Administration. This argument is also foreclosed by our caselaw. In *Foster v. Mahdesian,* 268 F.3d 689, 694 (9th Cir.2001), *cert. denied, Foster v. Garcy,* — U.S. —, 122 S.Ct. 2327, 153

L.Ed.2d 159 (2002), we held that a public sector employer who deducts "fair share" fees from an employee's paycheck is not liable if the union fails to provide adequate notice under *Hudson*. We stated that "the routine collection of agency fees does not trigger a duty ... to ensure that every employee has received a proper *Hudson* notice." *Id.* at 693. Such a duty arises only if the employer takes "adverse action" against the fee payer. *See Knight*, 131 F.3d at 817. "Adverse action" must be more serious than the routine collection of fees. *Foster*, 268 F.3d at 693.

Plaintiffs offer no explanation why Morgenstern should be liable for the defective *Hudson* notices. Instead, they again suggest that *Foster* should not be followed because it conflicts with language in *Knight* regarding when an employer has an obligation for the sufficiency of a *Hudson* notice. *Knight*, 131 F.3d at 817(holding that a school district cannot take "adverse action" against a nonmember employee without ensuring adequate *Hudson* notice was given). *Foster*, however, contains a detailed discussion of the *Knight* decision. 268 F.3d at 693–94. Rather than conflicting with Knight, Foster interprets and clarifies *Knight* and the meaning of the term "adverse action" within that decision. *See id.*

■ With respect to defendant Connell, the plaintiffs attempt to distinguish *Foster* because Connell is also responsible for mailing the *Hudson* notices. This fact is not significant. The State Controller is responsible for mailing the *Hudson* notices because of the large number of employees who have requested that their home addresses not be disclosed outside of state government. The act of mailing notices is only a ministerial function; there is no suggestion the Controller has any responsibility for the content of such notices. Moreover, it would be strange to say that the mere act of mailing notices is "adverse action" against an employee, when the act of taking money from their check is not. *See id.* The district court properly declined to enter judgment against Connell and Morgenstern.

## V. Permanent Injunction

■ The district court's denial of a permanent injunction is reviewed for abuse of discretion. *Tollis, Inc. v. San Bernardino County*, 827 F.2d 1329, 1331 (9th Cir.1987). Plaintiffs contend that the district court abused its discretion by failing to grant a permanent injunction "barring all fee seizures from the nonmembers in the absence of adequate notice and procedures."

■ In seeking a permanent injunction, the moving party must convince the court that relief is needed: "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). In this case, the district court did not believe that a permanent injunction was warranted, noting that the Union mailed a proper notice in May 2000 for the 1999 fee payer year and then mailed another proper notice in June 2000 for the 2000 fee payer year. Thus, the court found "a constitutional agency-fee collection procedure is established and operating, and injunctive relief is no longer warranted." In addition, the Union's controller, Patrick Haagensen, declared under penalty of perjury that the Union would use the same *Hudson* notice format in the future.[3]

---

**3.** We note that the inclusion of an allocation audit is no longer required in light of our holding in Section I, above.

In a recent decision involving similar facts, we held that a district court had properly refused to grant declaratory and injunctive relief where a union had mailed an inadequate notice in October 1998, but then mailed a proper notice in December. *Carlson v. United Academics*, 265 F.3d 778, 786 (9th Cir.2001), *cert. denied*, 535 U.S. 970, 122 S.Ct. 1437, 152 L.Ed.2d 381 (2002). We noted that "[i]t is unreasonable to think that the Union would resort to conduct that it had admitted in writing was constitutionally deficient and had attempted to correct.... We do not believe United Academics would now attempt to revert to the deficient notice format and subject itself to future litigation that it would clearly lose." *Id.* at 786–87; *see also Wessel*, 299 F.3d at 1194(holding that there is no need for permanent injunction where union issued corrected fair share notice and committed itself to include required information in future notices).

The requirements of *Hudson* in this circuit have been clarified by this litigation. As in *Carlson*, it would be foolish for the Union to now revert to a deficient format and subject itself to additional lawsuits. The district court did not abuse its discretion by refusing to grant a permanent injunction.

## VI. Standing to Challenge Indemnification Clause

▆ Plaintiffs also challenge the district court's determination that they lacked standing to challenge indemnification clauses in the CBAs regarding liability for seizure of compulsory dues. This issue was initially decided in *Prescott I*, 177 F.3d at 1112 (finding plaintiffs lacked standing). *Prescott I* was then vacated and remanded by the Supreme Court for reconsideration in light of *Friends of the Earth, Inc. v.*

*Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). The panel in turn remanded the case to the district court for reconsideration of the standing issue. *Prescott v. County of El Dorado ("Prescott II")*, 204 F.3d 984, 984–85 (9th Cir.2000).

On remand, the district court again found that the plaintiffs lacked standing to challenge the indemnification clause. On appeal, we recently affirmed once more, again finding that the plaintiffs lacked standing. *Prescott v. County of El Dorado ("Prescott III")*, 298 F.3d 844, 846 (9th Cir.2002). Plaintiffs concede that *Prescott III* controls their claim as well, and we therefore affirm the district court's determination that the plaintiffs lack standing to challenge the indemnification clauses.

## VII. Attorneys' Fees and Costs

On remand, the district court should reconsider the issue of attorneys' fees and costs to determine whether further reduction is appropriate in light of our decision regarding the proper remedy for the *Hudson* violation. We do, however, believe it may be helpful to speak to the issue of the initial cost award, as the Union contends that the district court abused its discretion by awarding plaintiffs nearly all their costs despite substantially reducing the fee award to reflect limited success on the merits.[4]

▆ From our reading of the district court's order, it appears that the court recognized that it had the discretion to reduce the cost award as well, but declined to do so because the costs incurred were sufficiently related to the successful claims to justify the full award. Because the Union seems to think the court did not

---

**4.** Plaintiffs had contended that the Union had miscalculated the fee by charging fee payers for two nonchargeable expenditures, but were

unsuccessful on these claims. Plaintiffs did not appeal from the grant of summary judgment to defendants on these claims.

recognize its ability to reduce the cost award, we wish to clarify that the district court *may* reduce costs to reflect limited success on the merits, *see, e.g., Bryant v. City of Chicago,* 200 F.3d 1092, 1102 (7th Cir.), *cert. denied,* 531 U.S. 821, 121 S.Ct. 64, 148 L.Ed.2d 30 (2000); *Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1258 (10th Cir.1998), but that it is not required to do so if such costs are sufficiently related to the plaintiffs' successful *Hudson* claim.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED. Each party to bear its own costs on appeal.