**SOUTH FERRY LP # 2, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**Kerry K. KILLINGER, et al., Defendants.**

No. C04–1599–JCC.

United States District Court, W.D. Washington, at Seattle.

Jan. 6, 2011.

---

David L. Lansky, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Barry M. Kaplan, Douglas W. Greene, Wilson Sonsini Goodrich & Rosati, John Goldmark, Steven P. Caplow, Davis Wright Tremaine, Katherine A. Foley, Robert M. Sulkin, McNaul, Ebel, Nawrot, Helgren & Vance, Seattle, WA, Barry Robert Ostrager, Mary Kay Vyskocil, Simpson Thacher & Bartlett, Anne Perry, Eric Ruben, Judith L. Mogul, Richard Albert, Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer PC, New York, NY, Deborah L. Stein, Jonathan M. Weiss, K. Lucy Atwood, Nathan Agam, Simpson Thacher & Bartlett LLP, Los Angeles, CA, for Defendants.

## ORDER

JOHN C. COUGHENOUR, District Judge.

This matter comes before the Court on Plaintiffs' motion for class certification (Dkt. No. 210), Individual Defendants' response (Dkt. No. 231), Plaintiffs' reply (Dkt. No. 241), Individual Defendants' surreply (Dkt. No. 244), and Plaintiffs' response to the surreply (Dkt. No. 247). Having thoroughly considered the parties' briefing and the record, the Court finds oral argument unnecessary and GRANTS in part and DENIES in part the motion for the reasons explained herein.

## I. BACKGROUND

Plaintiffs seek to certify a class defined as: "All persons who purchased the common stock of Washington Mutual, Inc. between April 15, 2003 and June 28, 2004, inclusive (the 'Class Period') and who were damaged thereby (the 'Class')." (Class Certification Mot. 1 (Dkt. No. 210 at 6).) Plaintiffs propose excluding from the class:

Washington Mutual, Inc. and the Individual Defendants ...; former defendants William W. Longbrake, Craig J. Chapman and James G. Vanasek; the officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which any of the Defendants or former defendants have or had a controlling interest.

(*Id.*) The "Individual Defendants" are:

(i) Kerry K. Killinger ("Killinger"), Chairman of the Board of Directors, President, and Chief Executive Officer of WaMu during the Class Period; (ii) Thomas W. Casey ("Casey"), Executive Vice President, Chief Financial Officer, member of the Executive Committee and President's Counsel during the Class Period; and (iii) Deanna Oppenheimer ("Oppenheimer"), President of the Consumer Group and an executive management team member during the Class Period.

(*Id.*)

The lead plaintiffs and proposed class representatives are Walden Management Co. Pension Plan (Walden) and Metzler Investment GmbH (Metzler). (*Id.* at 1, 4.) Walden, a pension fund, purchased 5,816 shares of Washington Mutual (WaMu) common stock between December 30, 2003, and May 14, 2004. (*Id.* at 5; Second Am. Certification 1 (Dkt. No. 211–2).) Metzler, a capital investment company headquartered in Germany, purchased 193,801 shares of WaMu common stock for three German funds between April 30, 2003, and May 25, 2004. (Class Certification Mot. 4 (Dkt. No. 210 at 9); Ex. A 1 (Dkt. No. 8–2).)

When appointed lead plaintiff, Metzler claimed standing from its position as an investment manager for the three funds under German law. (Consolidation Mot. 1 n. 1 (Dkt. No. 6 at 2).) Metzler has since closed the funds and returned all assets to investors. (Buchmann Dep. 35–36 (Dkt. No. 232–2 at 3–4).) Plaintiffs concede that Metzler lost standing when it closed the funds but contend that Metzler cured the deficiency by obtaining assignments of the right to litigate. (Pls.' Reply to Defs.' Surreply 1 (Dkt. No. 247 at 2).)

The Court lays out Plaintiffs' claims and allegations in detail in the Court's previous orders. (*See* Dkt. Nos. 73, 179.) The Court does not address them separately here.

## II. DISCUSSION

Defendants attack the propriety of the proposed class representatives and the length of the proposed class period. The Court addresses the length of the proposed class period before turning to the challenges to the class representatives. The Court declines to close the class period on September 9, 2003, instead establishing the class period as April 15, 2003, through June 28, 2004. The Court finds that Metzler is an atypical plaintiff and therefore not suited to be a class representative. The Court finds that Walden is an adequate class representative and grants certification with Walden as the class representative.

### A. Class Period

■ Defendants contend that the class period should end on September 9, 2003, the date on which Defendants allege that WaMu made a fully curative disclosure of its operational problems with pipeline hedging. (Defs.' Resp. 6 (Dkt. No. 231 at 11).) Plaintiffs' complaint relies on the fraud-on-the-market presumption, which requires that a "plaintiff traded the shares between the time the misrepresentations were made and the time the truth was revealed." *No. 84 Emp'r–Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 947 (9th Cir.2003) (citing *Basic Inc. v. Levinson,* 485 U.S. 224, 248 n. 27, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). "Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Basic Inc.*, 485 U.S. at 248, 108 S.Ct. 978. Defendants argue that the September 9, 2003, statement revealed the truth about its pipeline hedging problems and thus rebuts Plaintiffs' fraud-on-the-market presumption. (Defs.' Resp. 6 (Dkt. No. 231 at 11).)

Plaintiffs not only contend that the September 9, 2003, disclosure was not fully corrective, Plaintiffs allege that the disclosure was materially false and misleading. (Am. Compl. ¶ 76 (Dkt. No. 54–2 at 10).) The Court twice upheld the sufficiency of these allegations. *See S. Ferry LP No. 2 v. Kil-* *linger,* 399 F.Supp.2d 1121, 1138–1140 (W.D.Wash.2005); *S. Ferry LP # 2 v. Killinger,* 687 F.Supp.2d 1248, 1253 (W.D.Wash. 2009).

The Court declines to rule on whether the September 9, 2003, statement was fully curative at this time. "Whether or not a particular release or disclosure actually cured a prior misrepresentation is a sensitive issue to rule on at this early stage of the proceedings because it comes so close to assessing the ultimate merits in the case, and courts therefore decline to find reliance thereafter unreasonable, as a matter of law, unless there is no substantial doubt as to the curative effect of the announcement." *In re LDK Solar Sec. Litig.,* 255 F.R.D. 519, 528 (N.D.Cal.2009) (citing *In re Fed. Nat'l Mortg. Ass'n Sec. Litig.,* 247 F.R.D. 32, 39 (D.D.C.2008)); *see also In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. 267, 307 (S.D.N.Y.2003) ("[A] class period should not be cut off if questions of fact remain as to whether the disclosures completely cured the market."). The Court finds substantial doubt as to the curative effect of the September 9, 2003, statement.

Further, the Court is not persuaded by Defendants' late attempt to bifurcate the complaint into two separate causes of action. As the Court previously stated, "the nub of the Complaint is that Defendants repeatedly represented to the investing public that (1) WaMu had successfully integrated the various technology platforms and operational processes from certain recent acquisitions, and that (2) WaMu was well positioned to withstand market changes in interest rates because of its hedging operations and the natural counterbalance of its risk." *S. Ferry LP # 2,* 687 F.Supp.2d at 1250. These allegations suggest an ongoing course of action not limited to the pipeline-hedging problems. Accordingly, the Court declines to close the class period on September 9, 2003. The Class Period is set as April 15, 2003, through June 28, 2004.

### B. Rule 23(a)

■ A class action may be maintained only if it meets all four criteria of Federal Rule of Civil Procedure 23(a) and falls into one of the three categories described in Rule 23(b).

*Shady Grove Orthopedic Assocs., P.A. v. All-state Ins. Co.,* —— U.S. ——, 130 S.Ct. 1431, 1437, 176 L.Ed.2d 311 (2010). Rule 23(a) requires a showing that

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). A district court must not decide the merits of a factual or legal dispute before it grants class certification. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.,* 593 F.3d 802, 808–09 (9th Cir.2010).

#### 1. Numerosity

Defendants do not dispute that Plaintiffs satisfy this element. The Court finds sufficient evidence that joinder of all members of the proposed class is impractical. Since WaMu stock was heavily traded and widely available during the Class Period, there are a substantial number of affected parties. (*See* Feinstein Report ¶ 35 (Dkt. No. 211–3 at 10) (noting that the daily average trading volume of WaMu's common stock was 4.3 million shares during the Class Period).) The Court finds this element satisfied.

#### 2. Common Questions of Law and Fact

Defendants do not dispute that common legal and factual issues underlie Plaintiffs' claims. Plaintiffs have shown that there are common questions of fact regarding the alleged false statements and omissions made by Defendants and that various common questions of law affect the merits of Plaintiffs' claims. (Class Certification Mot. 9 (Dkt. No. 210 at 14).) Plaintiffs satisfy this element.

#### 3. Typicality and Adequacy

Defendants argue that Metzler and Walden do not satisfy the typicality and adequacy requirements of Rule 23(a).

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175 (9th Cir.2010) (quotation marks and citation omitted). "The typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir.2010) (citation omitted). A "motion for certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses that are unique to it." *State of Alaska v. Suburban Propane Gas Corp.,* 123 F.3d 1317, 1321 (9th Cir. 1997).

The issue of legal adequacy requires that two questions be addressed: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),* 213 F.3d 454, 462 (9th Cir.2000). "Some courts have denied class certification when 'the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interest of the class against the possibly competing interest of the attorneys.'" *In re Wash. Mut., Inc. Sec., Derivative, & ERISA Litig.,* Nos. 2:08–md–1919, C08–387, 2010 WL 4272567, at *5–6 (W.D.Wash. Oct. 12, 2010) (quoting *Buus v. WAMU Pension Plan,* 251 F.R.D. 578, 587 (W.D.Wash.2008)). However, courts are reluctant to deny class certification for a lack of sophistication. *See, e.g., Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 372, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (affirming class certification where the named plaintiff knew nothing about the con-

tent of the suit but knew she was not getting her stock dividends); *Buus*, 251 F.R.D. at 587 (finding a class representative adequate who was able to summarize what the litigation was about but did not know that she participated in a pension plan subject to the litigation and was unsure of what relief she wanted).

### a. Metzler

■ Defendants contend that Metzler lacks standing to bring suit and therefore cannot satisfy the adequacy and typicality requirements of Rule 23(a). (Defs.' Resp. 11 (Dkt. No. 231 at 16).) "[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir.2003) (citation omitted). To satisfy constitutional standing requirements, a plaintiff must show (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Defendants challenge Metzler's standing on the first element, claiming Metzler has not suffered an injury in fact.

While the Ninth Circuit has not directly addressed the issue of whether investment advisers have Article III standing to pursue claims for their clients, the Second Circuit held that an investment adviser cannot pursue claims on behalf of its clients because it has not suffered an injury in fact. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 110–11 (2d Cir.2008). However, outside the context of securities class action, the Supreme Court held that a valid assignment gives a plaintiff standing to pursue the assignor's claims, even if the assignee would not receive any pecuniary gain from pursuing the action and would not otherwise have standing. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008). Two courts have held, post *Huff*, that a valid assignment can cure an investment-adviser plaintiff's standing deficiency in securities class actions. *See In re Vivendi Universal S.A. Sec. Litig.*, 605 F.Supp.2d 570, 584 (S.D.N.Y.2009); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 609 F.Supp.2d 938, 942 (N.D.Cal.2009), *rev'd on other grounds*, 615 F.3d 1106 (9th Cir.2010). Thus, the narrow question here is whether the assignments to Metzler were valid, curing Metzler's standing deficiency.

As a preliminary consideration, Defendants request that the Court strike the Stürner declaration and the new exhibits contained in Plaintiffs' reply, including the assignments. (Defs.' Surreply 1 (Dkt. No. 244 at 2).) Plaintiffs did not disclose the assignments, exhibits, or Stürner declaration until almost two months after Defendants filed their response to the class-certification motion. (See Exs. 3–8 (Dkt. No. 242–6).) Generally, "it is not acceptable legal practice to present new evidence or new argument in a reply brief." *Roth v. BASF Corp.*, 2008 WL 2148803, at *3 (W.D.Wash.2008). However, because the Court comes to the same conclusion it would have absent the new materials, the Court does not strike the materials.

It is unclear whether the assignments made to Metzler are valid. According to Plaintiffs' expert, Stürner, the authority to sue under German law passes from the investment manager to the depository bank upon closure of a fund. (Stürner Decl. ¶ 15 (Dkt. No. 242–1 at 17).) Accordingly, the authority to sue passed from Metzler to the depository bank upon closure of the funds. (*Id.* at ¶ 15.) The depository bank is charged with liquidating the assets and distributing the proceeds from the fund. (*Id.* at ¶ 16.) The depository bank's authority to sue ceases once the bank liquidates and distributes all assets of the fund. (*Id.*)

Stürner acknowledges that German law does not explicitly provide the proper course of action when an investment manager commences litigation but loses the authority to sue due to the closure of the funds. (*Id.*) Instead, Stürner hypothesizes that "the preferable and most reasonable solution" is to assign the authority to sue back to the investment manager. (*Id.*) While German law permits the transfer of the right to dispose and sue from a depository bank to a different investment company, Stürner states that the legislature never considered a configuration where that right was transferred back to the

original investment manager. (*Id.* at ¶ 17.) However, Stürner finds "no good reason" not to permit the transfer of authority back to the investment manager. (*Id.*)

All of Stürner's conclusions are based on his interpretation of German law; Plaintiff has not shown that there is a solid foundation in German law for the assignments made to Metzler. Furthermore, Defendants did not have an opportunity to retain an expert in German law to give an opinion on whether such assignments would be valid. The Court finds the validity of the assignments questionable. Thus, Metzler's standing is tenuous at best.

■ Other courts in securities class actions have found that the uncertain standing of a class representative creates unique legal issues for that plaintiff and destroys its typicality and adequacy as a class representative. *See In re IMAX Sec. Litig.*, No. 06 Civ. 6128, 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009) (investment advisor was an atypical and inadequate class representative, regardless of whether assignments cured its deficient standing, because its standing issues "could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal"); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y.2009) (investment advisor did not satisfy the adequacy or typicality requirements, because "even if [the] Court held that the assignment was sufficient to cure the lack of standing, the Court of Appeals could hold otherwise"); *see also Baydale v. Am. Express Co.*, No. 09 Civ. 3016, 2009 WL 2603140, *3 (S.D.N.Y. Aug. 14, 2009). "Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff ... then the named plaintiff is not a proper class representative." *Koos v. First Nat'l Bank,* 496 F.2d 1162, 1164 (7th Cir.1974).

■ Here, Metzler's uncertain standing renders Metzler an atypical class representative. Even if the Court were to conclude that the assignments cured Metzler's standing deficiency, the Court of Appeals could hold otherwise. Metzler's standing presents a unique legal issue that could ultimately severely prejudice the class. It is predicta-ble that Metzler's standing could become a major focus of the litigation. Thus, Metzler is not a proper class representative.

### b. Walden

#### i. Timing of Walden's Purchases

Defendants argue that Walden is atypical and not part of the class because of the timing of Walden's WaMu stock purchases. (Defs.' Resp. 18 (Dkt. No. 231 at 23).) Walden first purchased stock on December 30, 2003, and again on February 14, 2004, and May 14, 2004. (Third Am. Certification 1 (Dkt. No. 232–3 at 50).) Defendants contend that Walden is not part of the class because its initial purchase of stock was after September 9, 2003—the date Defendants claim WaMu made a fully corrective disclosure. (Defs.' Resp. 18 (Dkt. No. 231 at 23).) Further, Defendants contend that Walden's purchase of WaMu stock after WaMu's disclosed losses from mortgage-servicing-rights (MSR) hedging in Q2 2004 render Walden atypical, because it raises questions of whether Walden can rely on the fraud-on-the-market presumption. (*Id.* at 18–19.)

The Court, as explained above, declines to find that the Class Period ends on September 9, 2003, because factual uncertainty remains regarding the curative nature of the September 9, 2003, statement. "Courts have held that where the fraud is only partially revealed ..., or where factual uncertainty persists regarding the extent to which a disclosure revealed the fraud, the [fraud-on-the-market] presumption is not defeated and the class can contain members who purchased both before and after the alleged corrective disclosure." *In re LDK Solar Sec. Litig.,* 255 F.R.D. 519, 528 (N.D.Cal.2009) (citations omitted). Therefore Defendants' argument that Walden is outside of the Class Period fails.

■ The Court rejects Defendants' argument that Walden is atypical because it purchased WaMu stock after WaMu's disclosure of its MSR hedging losses in Q2 2004. (Defs.' Resp. 18–19 (Dkt. No. 231 at 23–24).) Other courts have rejected similar arguments. *See In re Connetics Corp. Sec. Litig.,*

257 F.R.D. 572, 576 (N.D.Cal.2009) (rejecting the argument that "a plaintiff is atypical if it buys stock after the disclosure of an alleged fraud"); *see also In re Wash. Mut.*, 2010 WL 4272567, at *5–6 (holding that lead plaintiff that bought stock after the adverse disclosures had satisfied the typicality requirement); *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 719 (C.D.Cal.2002) (same). The Court finds these cases persuasive. Additionally, factual uncertainty exists as to whether the Q2 2004 disclosure was fully corrective. Accordingly, Walden's May 14, 2004, purchases of WaMu stock do not destroy its typicality.

### ii. Walden's Errors on PSLRA Certifications

Defendants argue that errors made by Don Daseke, Walden's trustee, on Walden's PSLRA certifications demonstrate that Walden is an inadequate class representative. (Defs.' Resp. 19–20 (Dkt. No. 231 at 24–25).) Daseke corrected the errors as soon as they were brought to his attention. (Pls.'s Reply 11–12 (Dkt. No. 241 at 15–16).) The Court finds that Daseke's errors were harmless and do not render Walden inadequate. *See Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 397 n. 3 (N.D.Ill.1999).

### iii. Errors in Disclosure of Prior Securities Actions

Defendants allege that Walden is an inadequate class representative because Daseke's role in other litigation was not initially disclosed in Plaintiffs' interrogatory responses. (Defs.' Resp. 20–21 (Dkt. No. 231 at 25–26).) However, Defendants concede that Plaintiffs revised their interrogatory response to include information about Daseke's prior litigation involvement. (*Id.* at 20.) Still, Defendants contend that Daseke's failure to ensure the accuracy of sworn documents indicates that Walden lacks the competence to be a class representative. (*Id.* at 20–21.) The Court rejects this attack on Walden's adequacy, finding that the alleged evidence is unpersuasive and insufficient to meet the high burden for rejecting a class representative as incompetent.

### iv. Daseke's Fiduciary Capacity

Defendants contend that Walden is not an adequate class representative because Daseke does not possess the characteristics and integrity necessary to fulfill the fiduciary role. (Defs.' Resp. 21–22 (Dkt. No. 231 at 26–27).) To attack Daseke's character, Defendants cite a lawsuit brought against him for breach of fiduciary duty. (*Id.* at 21.) While the Court finds this evidence mildly persuasive, the suit alone is insufficient evidence that Walden is an inadequate class representative. The Court does not find the other arguments against Daseke's character persuasive, as they are based on insignificant errors made by Daseke.

### v. Daseke's Financial Interest in the Litigation

Defendants argue that the small pecuniary value of Daseke's interest in the litigation creates the risk that Daseke's personal interests could collide with the interests of the absent class members. (Defs.' Resp. 23 (Dkt. No. 231 at 28).) Several courts have held that the relatively insubstantial value of a plaintiff's claim does not prevent the plaintiff from adequately representing the class. *See, e.g., In re Nature's Sunshine Prods. Inc. Sec. Litig.*, 251 F.R.D. 656, 661 (D.Utah 2008); *In re S. Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 418 (M.D.La.1980); *Lewis v. Capital Mortg. Invs.*, 78 F.R.D. 295, 303 (D.Md.1977). The Court finds these holdings persuasive. Accordingly, the Court rejects Defendants' argument.

### vi. Potential for Subclasses

It is foreseeable that Defendants will again raise the argument that the September 9, 2003, disclosure was fully corrective of the misrepresentations regarding the pipeline risk, and that the statements surrounding the MSR risk constitute a separate cause of action. This argument could result in divergent interests for plaintiffs who purchased WaMu stock before and after the September 9, 2003, disclosure. However, the Ninth Circuit "does not favor denial of class certification on the basis of speculative conflicts." *Cummings v. Connell*, 316 F.3d 886, 896 (9th

Cir.2003). If these differences later appear significant, the Court can accommodate the divergent interests through the division of the above defined class into subclasses. Fed. R.Civ.P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *id.* 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."); *see also Blackie v. Barrack,* 524 F.2d 891, 909 (9th Cir.1975) ("[Rule 23(c)(5)] provides the mechanism of subsequent creation of subclasses ... to deal with latent conflicts which may surface as the suit progresses."); *Kohen v. Pac. Inv. Mgmt. Co. LLC,* 571 F.3d 672, 680 (7th Cir.2009) ("[T]he existence of such conflicts is hypothetical. If and when they become real, the district court can certify subclasses with separate representation of each."); *Harris v. Koenig,* 271 F.R.D. 383, 391, No. 02–618, 2010 WL 4553537, at *7 (D.D.C. Nov. 12, 2010) ("[I]n the event that ... a conflict does arise, the Court has discretion to consider creating sub-classes.").

### C. Rule 23(b)(3) Requirements

Plaintiffs seek certification under Rule 23(b)(3), requiring the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

■ The Court has held that Plaintiffs adequately advanced the common theory of continuing fraudulent or materially misleading statements regarding WaMu's ability to effectively hedge in different interest-rate environments. The issue of whether the September 9, 2003, statement was a fully corrective disclosure is a factual issue common to all class members. As the Court previously noted, where factual uncertainty persists regarding whether a disclosure was fully corrective, the class can contain members who purchased before and after the disclosure. *In re LDK Solar Sec. Litig.,* 255 F.R.D. at 528. If necessary, the class can later be divided into subclasses. Accordingly, the Court finds that common questions of law and fact predominate. Defendants do not dispute that the controversy is best adjudicated as a class action, and the Court agrees with Plaintiffs that it is. Plaintiffs satisfy the Rule 23(b)(3) requirements.

## III. CONCLUSION

The Court finds that Walden qualifies and Metzler does not qualify as a class representative. For the foregoing reasons, the Court GRANTS Plaintiffs' motion for class certification (Dkt. No. 210) with Walden as the class representative and DENIES certification of Metzler as a class representative.